## UNITED STATES *v.* HOPKINS.

*(District Court, W. D. North Carolina.* November, 1885.)

1. CRIMINAL LAW—PASSING COUNTERFEIT MONEY—WHAT CONSTITUTES COUNTERFEIT COIN.

A counterfeit coin is one made in imitation of a genuine coin. It is not necessary that the resemblance should be exact in all respects. The resemblance is sufficient if the coins are so far alike that the counterfeit coin is calculated to deceive a person exercising ordinary caution and observation in the transactions of business, although the counterfeit would not deceive a person who was expert or has particular experience in such matters.

2. SAME—ORDINARY CAUTION.

Ordinary caution is such caution as is ordinarily exercised by prudent men in the particular transactions in which they are engaged.

3. SAME—INTENT.

The counterfeit coin must be passed with the intent to deceive before a defendant can be convicted of the crime charged. The mere act of passing a counterfeit coin on one occasion is not of itself evidence of a purpose to deceive; but the manner in which it was done and the attendant circumstances are to be taken into consideration.

Indictment for Passing Counterfeit Money.

*H. C. Jones,* U. S. Dist. Atty., for the United States.

*F. C. Fisher,* for defendant.

DICK, J., *(charging jury.)* Before the counsel proceeded to address you upon matters of fact, I required them to present to the court their views upon the questions of law involved in this case. The counsel for the defense insisted that the defendant could not be properly convicted on the first count, as the coin alleged to have been passed to the witness Shelton was so imperfectly executed as not to be calculated to deceive a person exercising ordinary caution and observation. The rule of law upon this subject has often been stated by text writers, and also by judges in the trials of similar cases. A counterfeit coin is one made in imitation of some genuine coin. It is not necessary that the resemblance should be exact in all respects. The resemblance is sufficient if the coins are so far alike that the counterfeit coin is calculated to deceive a person exercising ordinary caution and observation in the usual transactions of business, though the counterfeit would not deceive a person who was expert or has particular experience in such matters. This rule has been more fully applied in cases of written or printed instruments which are used in

ordinary business transactions, as prudent men are presumed to exercise reasonable caution in accepting instruments which are evidences of contracts and obligations. The rule is also usually strictly observed in cases where a defendant is charged with *making or having in possession* counterfeit coins, with a fraudulent intent of passing the same, as such fraudulent intent, in some degree, arises from the care and skill with which such coins are manufactured. We know, from the general experience of mankind, that more caution and observation are usually exercised in receiving valuable gold coin than in receiving silver coins of small value.

Coins are manufactured under the authority of the general government, and are designed to be a medium of exchange and a standard of value for the use of people in trade and other business transactions, and are intended for circulation both in the night and day time, among the rich and the poor, the expert and the ignorant The questions as to what is a sufficient similitude to deceive, and what is ordinary caution in receiving money, must in every trial be determined by a jury, who in their investigations should consider the circumstances attending the particular transaction involved. Ordinary caution is such caution as is usually exercised by prudent men in the particular transactions in which they are engaged. More careful observation is expected of an expert banker, who, in regular hours, daily receives money at his counter, than of a railroad agent, who, in the hurry of business, in the day and night, sells tickets at his window to eager and impatient travelers.

The highly penal laws in regard to the passing of counterfeit money were designed to secure against fraud and deception, not only experienced and cautious traders, but also poor and ignorant persons who seldom handle money, and have acquired no skill in detecting spurious coin. Statutes intended to remedy some existing mischief should be so construed and enforced as to render the remedy effectual, unless such construction and enforcement violate some fundamental principle of law. Genuine silver half dollars coined in the mint of the United States have certain well-known characteristics. They are round, and have graining on the edges. They are of uniform size, thickness, and weight; have the color and luster of silver, which, when dim, may be brightened by rubbing; and they are stamped on both sides with the devices prescribed by law. The counterfeit half dollar introduced in evidence, which the defendant passed to Shelton, has all the characteristic appearances of a genuine silver coin; but the metal is lead or pewter, and the devices are imperfectly executed. You will consider the circumstances under which the coin was received by Shelton in determining the question of ordinary caution.

It appears in evidence that the defendant, on a certain occasion, was in company with several young men, and he offered to *treat the crowd* to 15 cents' worth of apples if some one would give him change

for a half dollar. The defendant at the time had the coin between his hands concealed from view and was rubbing it. The witness Shelton furnished the change, and the defendant dropped the counterfeit coin into the open purse of Shelton. There was no other coin of that denomination in the purse, and the witness did not discover that the coin was spurious for a day or two afterwards. The witness was *actually* deceived, and from the testimony you may well conclude that the coin has such a resemblance to a genuine coin as to be calculated to deceive the taker exercising the observation that would usually be made under the circumstances of the transaction.

The next question which you have to consider is whether the defendant passed the counterfeit coin to Shelton with a knowledge that the same was spurious, as such knowledge is necessary to show a fraudulent intent. The counsel for the defense stated correctly a rule of evidence in saying that a single act of passing counterfeit money gives rise to no *presumption* of a fraudulent intent, and he insisted that the jury should not consider the transaction alleged in the second count of the indictment, as the witness Brown did not sufficiently identify the defendant as the person who passed him the spurious coin. If you are not fully satisfied that the defendant is the person who passed the counterfeit coin referred to in the second count, you must not allow that transaction to influence your judgment. The mere act of passing counterfeit coin on one occasion is not of itself evidence of a purpose to deceive, but you can consider the manner in which the act was done and other attending circumstances as presented by the evidence. I will not recapitulate the evidence in relation to the conduct of the defendant in passing the coin, and his subsequent efforts to redeem the same. I feel sure that you are familiar with all the facts and circumstances of the transaction, as you have listened attentively to the testimony, and your recollections and judgments have been enlightened by the full and able argument of counsel. You must be satisfied of the defendant's guilt beyond a reasonable doubt before you return a verdict of guilty, as the prosecution must fully rebut the presumption of innocence which the law throws over the defendant, before a conviction can be properly obtained.

The counsel for the defense referred to several high authorities, and discussed at length the legal rule as to the nature of *a reasonable doubt.* Judges have sometimes attempted to define the doctrine with completeness and precision, and have always failed. The inherent imperfection of language renders it impossible to define in exact express terms the nature of a reasonable doubt. It arises from a mental operation, and exists in the mind when the judgment is not fully satisfied as to the truth of a criminal charge, or the occurrence of a particular event, or the existence of a thing. It is a matter that must be determined by a jury, acting under the obligations of their oaths and their sense of right and duty.

In the second count the defendant is charged with passing a counterfeit half dollar to the witness Brown. The evidence shows that some person, in the night-time, passed a counterfeit half dollar to Brown at the door of a store-house in Waynesville. The negotiation for the sale of a watch, which induced the payment of the spurious coin, took place in the store-house, which was dimly lighted. The person who purchased the watch requested Brown to step out of the door, and the payment was made in the darkness. Brown told the purchaser that he was afraid the money was counterfeit, and when he went back into the store-house to examine the coin, the purchaser walked away rapidly. It is conceded that the person who passed the coin to Brown did so with a fraudulent intent. Brown was not acquainted with the defendant at the time of the trade for the watch, but said in his testimony that, according to his best recollection and judgment, he is the man who passed the counterfeit coin at the door of the store-house in Waynesville. When the witness was asked to describe the man who defrauded him, he said, in substance, that the man was of medium height, wore an overcoat, and had Burnside whiskers. This is a rather indefinite description, and, of itself, would not be sufficient to identify the defendant. There is evidence that, at the time the defendant passed counterfeit coin to the witness Shelton, he had Burnside whiskers. The coin passed to Shelton and the coin passed to Brown have certain peculiarities in the devices which show that they were manufactured in the same mould. The knowledge of the witness as to the identity of the defendant is not to be measured by his power of description. No one can fully explain how and why he knows a person whom he has seen upon a former occasion, unless such person has some marked peculiarity. We see a person, and an impression is made on the memory, more or less distinct, according to circumstances, which enables us to recognize such person when we meet him again; but in such matters we are liable to mistake. The witness was engaged in a business transaction with the person in the store-house, and, upon seeing the defendant in court, he says that, according to his best impression and belief, the defendant is the man who passed him the counterfeit half dollar produced in evidence. Belief as to the identity of a person formed by one observation falls short of a more complete knowledge acquired by frequent association; but it is some evidence on the question. The belief of the witness as to the identity of the defendant should be considered by you, in connection with all attendant circumstances, and with other coincident evidence.

If you are satisfied beyond a reasonable doubt that the defendant is the person who passed the counterfeit half dollar to Brown, as charged in the second count of the indictment, you should return a verdict of guilty.