ADOLPH PINCUS, APPELLANT, *v.* SAMUEL J. REYN-
OLDS, SHERIFF, RESPONDENT.

(Submitted May 21, 1897. Decided May 31, 1897.)

*Fraudulent Conveyance—Evidence—Cross Examination—De-
claration of Conspirator.*

FRAUDULENT CONVEYANCE—A judgment, which is obtained upon notes known by the holder thereof to have been made for the purpose of defrauding creditors, is void as to creditors.

SAME—Where a judgment is void as to creditors, and the plaintiff in the action is the purchaser at the execution sale, his title is void as to an attacking creditor.

SAME—Although such creditor extended credit after he knew of the sale, he may attack the same for such a demand when he ascertains that the sale was fraudulent.

EVIDENCE—*Cross-Examination*—In an action for conversion, where the title of the plaintiff is attacked for fraud, he may be rigidly cross-examined as to the bona fides of his title.

SAME—*Hearsay*—Where the plaintiff is a party to a conspiracy to defraud creditors, the declarations of his co-conspirator, although made in his absence, are admissible in evidence.

*Appeal from District Court, Silver Bow county ; J. J.
McHatton, Judge.*

ACTION by Adolph Pincus against Samuel J. Reynolds for conversion. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action to recover the value of certain personal

property, described in the complaint, and which the plaintiff claims to be the owner of, and which he alleges the defendant wrongfully took and converted to his own use.

All of the material allegations of the complaint are denied by the answer, except as to the value of the property, which the defendant concedes is of the value of $300 only, instead of $3,500 as alleged in the complaint. The defendant at the time of the taking of the property, was the sheriff of Silver Bow county. He alleges that he took possession of the property under a writ of attachment issued in a suit in the district court of Silver Bow county, in a case wherein P. J. Brophy & Co., were the plaintiffs, and James Dunstan and Sol. Lachman were defendants, and justifies his taking of the property under said writ. The defendant further alleges in his answer that whatever claim or right to the property in question this plaintiff (Pincus) has he acquired under and by virtue of his purchase of the property at a sheriff's sale thereof, which sale was had in Silver Bow county under an execution issued on a judgment rendered in the district court of said county in favor of this plaintiff and against Lachman & Dunstan. The answer alleges that said sheriff's sale, at which this plaintiff purchased the goods in controversy, was illegal and void, for the reason that it was made and intended by said Pincus, the plaintiff in the execution and judgment under which said property was sold, and said Lachman & Dunstan, the defendants in said case, for the purpose of hindering and delaying the creditors of said Lachman & Dunstan, and particularly said Brophy & Co., in the collection of their just debts, and was intended to cover up property, and protect the said Lachman & Dunstan in the possession and use thereof against their said creditors, and that said sale was fraudulent and void as against the said creditors of Lachman & Dunstan for the reason that said sale was not accompanied by any delivery or followed by any change of possession of the property. The answer further alleges that the property so pretended to be sold at said sale, before and after said sale, was and remained in the exclusive possession of said Lachman & Dunstan.

The replication denies the allegations of the new matter contained in the answer, and alleges that Brophy & Co., had actual notice of the sale which the answer alleges to be fraudulent and void.

The case was tried with a jury, and a verdict rendered in favor of defendant, and a judgment in accordance therewith. This appeal is from the judgment and an order overruling plaintiff's motion for a new trial.

*O. M. Hall* and *Geo. Haldorn*, for Appellant.

*F. T. McBride*, for Respondent.

PEMBERTON, C. J.—The pivotal question to be determined on this appeal is as to whether the execution sale of the goods in controversy, under and by virtue of which the appellant claims ownership thereof, was illegal, fraudulent, and void for the reasons alleged in the answer.

The execution under which this sale took place was issued on the judgment rendered in the case of Pincus against Lachman & Dunstan, as set out in the statement of the case, and which judgment is attacked for fraud by the answer of respondent. The complaint in the case of Pincus against Lachman & Dunstan, mentioned above, and in which the alleged fraudulent judgment was rendered, alleges as causes for action four promissory notes executed by Lachman & Dunstan—the first for $1,000, dated December 7, 1891, payable to Pincus; the second, payable to Pincus, in the sum of $500, dated January 1, 1892; the third for $1,600, dated October 1, 1891; and the fourth for $1,250, dated February 1, 1892; the last two notes being payable to one S. D. Martin, who transferred them to Pincus before suit.

The evidence of Martin and Dunstan is positive that there was no consideration for the two Martin notes above mentioned. Concerning the execution of these notes Martin testified as follows:

"I agreed to take these notes to help them (Lachman & Dunstan) out; that is, to ostensibly have them in my debt

when they were not actually in my debt. These notes were given a few days before the time that Pincus brought suit against Lachman & Dunstan. If this $1,600 note is dated October, 1891, that date is incorrect, for the note was given to me about the time that Pincus brought suit, and, if his complaint was filed February 9, 1892, this note and the other note were given to me within two or three days of that date. * * * Pincus made the suggestion to me. * * * Pincus told me he was willing to 'help the boys out,' as he called it. * * ' * They were not to beat anybody. They just wanted an extension of time, and it was to give them an extension of time that this arrangement was made. They mentioned several creditors, Mr. Brophy in particular. Pincus said he would take these notes, and bring suit, and get judgment, and forestall their other creditors. Prior to the Pincus attachment, Lachman & Dunstan did not owe me a cent. Pincus and Lachman and I had a talk one time about the matter, walking across Main street towards the restaurant; and we had another conversation about it up in the Mint. I saw Lachman at the premises that evening after the sale. He was getting ready, and making calculations of opening up as soon as possible. The arrangement was that Pincus was to let them have the place, and go on and run it as we had agreed to do in the first place.''

Dunstan's testimony as to these two notes is as follows:

''That Lachman and he were partners in the restaurant business in 1892; that he knew Mr. Pincus; that at the date of the Martin notes Lachman & Dunstan did not owe Martin a dollar; that Lachman had told him that he would have to sign the Martin and Pincus notes; that the notes were just to confess judgment in favor of Pincus and Martin, so as to give us time, and keep other people from attaching us. On the 9th of February, 1892, we did not owe Sam Martin a dollar.''

This testimony is not disproved. While it is not literally admitted by Pincus & Lachman, it is not successfully contradicted, and, we think, is substantially admitted

by them, except that Pincus claims that Lachman & Dunstan did actually owe him $750, due by three promissory notes, of $250 each, and some other sums, making in all, as he claims, about $1,100. But the evidence conclusively shows that this $750 claim was not sued on by Pincus in the case we are discussing. After the execution sale in question, Pincus went to Lachman & Dunstan with the three $250 notes and required the execution of a $750 note in lieu of them ; and this $750 note was placed in bank, and Lachman & Dunstan paid the interest thereon to the bank for a long time after the suit, judgment and sale we are discussing.

From this evidence we do not see how the jury could have done otherwise than find that the judgment in favor of Pincus against Lachman & Dunstan, under which the sale took place at which Pincus bought the property in controversy, was fraudulent and void. It is generally difficult to prove fraud. The party alleging it must generally rely largely upon circumstantial evidence. But in this case we have the positive evidence of two of the conspirators and the substantial admission of the other two. The records of the courts rarely disclose such ample and positive proof of actual fraud as is found in this case. Here we are not compelled to grope through many labyrinths, and ways that are doubtful and dark, to find the slimy trail of the serpent. Here we have a bolder snake, who holds his head up, and disdains to hide or deny.

Counsel for appellant contends that the court erred by permitting Pincus, when on the stand as a witness, to be cross-examined as to the entire transactions between himself and Lachman & Dunstan and Martin, in relation to the giving of the notes sued on and the recovery of the judgment alleged to be fraudulent in defendant's answer. He says the court erroneously permitted the defendant to prove his case by Pincus by an improper cross-examination. But counsel overlooks the fact that Pincus claims in this case to be the owner of the property in controversy. His title is based upon his purchase of the property at an execution sale, which is alleged

to be invalid because had under a judgment obtained by fraud. So that the bona fides of Pincus' title became a material matter, which defendant had a right to inquire into by cross-examination. Pincus, being the party in interest, whose title was alleged to be fraudulent, was properly subjected to a rigid cross-examination for the purpose of ascertaining whether his claim of ownership was bona fide. In such cases the extent to which a cross-examination may go is largely discretionary with the trial court. We see no abuse of a sound judicial discretion here.

During the trial Dunstan was permitted, over appellant's objection, to testify that Lachman, long after the execution sale in controversy, asked him (Dunstan) to go to a lawyer's office to sign a mortgage to Pincus for the same goods purchased by Pincus at the execution sale, and now in controversy. It seems that Lachman had some fear that the execution sale would not stand, and the mortgage was needed to cover possible emergencies. The objection to this evidence is that Pincus was not present. But this was not part of the scheme of fraud. That scheme had not, in the opinion of the conspirators, been successfully carried out and completed. In such cases the declarations of any of the conspirators may be given in evidence, whether made in the presence of all or not. We see no error in this action of the court.

Counsel for appellant says Brophy & Co. cannot attack the sale of the property in question for fraud, because they knew of the sale and gave credit to Lachman & Dunstan after such sale.

Brophy & Co. had judgment against Lachman & Dunstan before this sale. They attached for an indebtedness accruing after the sale. But there is no proof that Brophy & Co. knew that the judgment obtained by Pincus against Lachman & Dunstan was fraudulent. As soon as they learned this, they had a right to attack it, whether their demands accrued before or after the execution sale.

The sale to Pincus of the goods in controversy having been under an execution issued upon a judgment absolutely void on

account of the actual fraud of Pincus and all the parties to such judgment, it becomes unnecessary for us to discuss the question of the necessity of an actual delivery and change of possession of personal property sold at a judicial sale. The judgment obtained by Pincus against Lachman & Dunstan was void. He acquired no title to the property by virtue of the execution sale as against the creditors of Lachman & Dunstan, whether he got actual possession at the sheriff's sale or not.

The judgment and order appealed from are affirmed.

*Affirmed.*

HUNT and BUCK, JJ., concur.