STATE, RESPONDENT, v. DOTSON, APPELLANT.

(No. 1,736.)

(Submitted January 21, 1902.   Decided February 24, 1902.)

*Criminal Law — Murder — Principals — Accessories — Evidence—Admissibility—Testimony of Defendant—Weight—Instructions—Statutory Construction.*

1. Where a witness in a homicide case, who is impeachable as an accomplice, details certain incriminating statements made by the defendant before the commission of the crime, and states that he repeated the conversations to others, his testimony as to when he did so is relevant and admissible on behalf of the state as introductory of evidence which may be adduced to show whether the witness was an accomplice.

2. Where evidence objected to as irrelevant is held on appeal to be relevant for a certain purpose, it is unnecessary to determine its relevancy for other purposes.

3. The distinction recognized by the common law between principals and accessories before the fact is, by Penal Code, Sec. 41, abolished in Montana.

4. Evidence reviewed and *held* sufficient to establish the fact that defendant—though not in person present when deceased was murdered—advised and encouraged the commission of the murder, and hence sufficient to render the defendant a principal under Penal Code, Sec. 41.

5. Evidence of the act or declaration of a conspirator which relates to the conspiracy may, after proof of the conspiracy, be given against his coconspirator.

6. An instruction requested by defendant, that, to warrant a verdict on a criminal charge on circumstantial evidence alone, the circumstances must be such as to produce "nearly" the same degree of certainty as that which arises from direct testimony, and sufficient to exclude all reasonable doubt of guilt, is bad, in being qualified by the word "nearly," and is properly refused.

7. A refusal of requested instructions presenting correct propositions of law is not erroneous, when the substance thereof is embraced in the general charge.

8. Section 2442 of the Penal Code provides that the jury in judging of the defendant's credibility and the weight to be given to his testimony *may* take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused. *Held,* that an instruction giving Section 2442, but which uses the word "must" in place of the statutory word "may," is not erroneous, even though Section 2442 of the Penal Code of 1895 changed the word "shall" of the theretofore existing law to "may."

9. A mere change in the words of a revision will not be deemed a change in the law unless it manifestly appears that such was the intention of the legislature.

*Appeal from District Court, Powell County; J. M. Clements, Judge.*

VOL. XXVI—20

CLINTON DOTSON was convicted of murder of the first degree, and he appeals. Affirmed.

*Mr. Joseph C. Smith* and *Mr. C. J. Walsh,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. JUSTICE PIGOTT delivered the opinion of the court.

Clinton Dotson was convicted of the deliberate murder of one Oliver Dotson and was condemned to death. He has appealed from the judgment and the order denying his motion for a new trial.

The evidence tended to prove the following facts: In October, 1899, the defendant, one Benson, and one Persinger were adjudged guilty of the murder of one Cullinane, the defendant being sentenced to imprisonment for ninety-nine years, and Benson and Persinger to shorter terms. The three men were then taken to the state prison at Deer Lodge. Oliver Dotson was the defendant's father and Benson's grandfather; the defendant is Benson's uncle. While in the state prison the defendant became intimate with one McArthur, otherwise known as Fleming, and occasionally calling himself Murphy or Murray, a convict whose term expired on December 30, 1900. In the early part of September, 1900, the defendant told Persinger that he had hired McArthur to murder Oliver Dotson; that he had promised to pay McArthur $7,600 for committing the crime, and that he had the money buried in Wyoming; that when McArthur got out of prison he would kill Oliver Dotson in such a way as to make it seem a case of suicide, leaving on the body a confession that Oliver Dotson and his son-in-law (a man named Cachline) had killed Cullinane and exonerating the defendant, Benson and Persinger; and that the three would then be released because of the confession. This conversation Persinger, on December 31, 1900, on January 12, and on February 21, 1901, repeated to other persons. Soon after the defendant and Benson were taken to the state prison for the mur-

der of Cullinane, the defendant told Benson that they would get out in a year or two and that Benson must remain quiet. On Christmas day, 1900, five days before McArthur was discharged, the defendant told Benson to deny the truth of a confession made by Benson at the trial for the murder of Cullinane and to say that he had been forced to make it. On the same day McArthur informed another convict that within three months after his release he would get the defendant out of prison. At the time McArthur was released, the defendant assured Benson that they would be out of prison in two or three months thereafter, but did not inform him how McArthur would accomplish that result. McArthur was discharged on the evening of December 30, 1900. He immediately sought Oliver Dotson, who lived alone in a cabin in Washington Gulch, an unfrequented and isolated region of Powell county. The next day but one after his discharge he was found at the cabin with Dotson. On the 15th day of February, McArthur murdered him and attempted to arrange the body so as to produce the impression that the decedent had committed suicide. He wrote and left near the body a confession purporting to be signed by Oliver Dotson, to the effect that Oliver Dotson and Cachline had murdered Cullinane, and that defendant and Benson and Persinger were innocent of that crime; that he was tired of living and was about to kill himself, and hoped the defendant would forgive the wrong done to him by his father. McArthur also wrote and placed near the body the pretended will of Oliver Dotson, giving to the defendant whom he had "wronged and put in prison" his property, except five dollars to each of his other six children. On February 16, 1901, the defendant received a letter from McArthur which he destroyed. Between the 16th and the 20th of that month the defendant informed Persinger that he had received a letter from McArthur "and that everything was working just as he expected." On February 20 the body of Oliver Dotson was found. Some time after February 20 one of the contractors of the prison induced the defendant to tell him where McArthur was, and McArthur

was apprehended at the place mentioned by the defendant. On February 24 the defendant told Persinger that they would be out in a short time, that McArthur "has done it just as I expected him to do it; I have sacrificed the life of my own father to get you fellows out of here and myself too, and if you give me away I will turn state's evidence; I have not done anything to turn state's evidence on." During the trial of the defendant, McArthur asked him to make a confession, which the defendant promised he would do, but on the next day he informed the officer in whose custody he was that upon the advice of his counsel he refused to say anything about the matter until after the trial. About April 1 the defendant told Persinger that he had remarked to Benson that what McArthur had done showed McArthur to be a true friend.

1.   The witness Persinger, after stating the conversation between himself and the defendant in which the latter said that he had hired McArthur to murder Oliver Dotson and that McArthur would do so upon his release from prison, testified, without objection, that he had told others about the conversation. He was then asked to state when he repeated the conversation, to which question the defendant objected as irrelevant and immaterial. The objection having been overruled, the witness answered that he told of the conversation on December 31, 1900, on January 12, and on February 21, 1901. This action of the court was excepted to and is specified as the first error. Counsel suggests, rather than argues, that the evidence was irrelevant. When offered the testimony was admissible as introductory to evidence that might thereafter be adduced upon the question whether Persinger was a conspirator with, and hence an accomplice of, the defendant and McArthur in the murder of Oliver Dotson. It was therefore deemed to be relevant. Since this reason is sufficient to sustain the ruling of the court, we need not inquire whether upon other grounds the testimony was relevant evidence.

2.   The distinction recognized by the common law between principals and accessories before the fact is abolished in this

state, and all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are principals. (Penal Code, Sec. 41.) The defendant was not physically present when Oliver Dotson was murdered by McArthur, and his counsel argue that the evidence was insufficient to justify the verdict. That the evidence was ample to prove the guilt of McArthur is not controverted. With his own hands he deliberately murdered the decedent. The contention is that there was not enough evidence to prove the existence of a conspiracy between the defendant and McArthur to commit the crime. But we are of the opinion that the evidence was sufficient to establish the fact that the defendant advised and encouraged McArthur to murder Oliver Dotson. The jurors were the exclusive judges of the credibility of the witnesses and of the weight to be given to the evidence.

3. To the introduction in evidence of declarations made by McArthur in January, 1901, that he was going to Washington Gulch "on a matter of business to do a job there for friends that are going to stake me and it is a matter of secrecy between me and them," and that he intended to kill Oliver Dotson and thereby bring about the release of the defendant, objection on the ground of incompetency, immateriality and hearsay, was interposed and overruled. The learned judge who so ably and fairly tried the cause did not err. Suffice it to say that these declarations tended to show McArthur's intention to accomplish the purposes of the conspiracy then in existence between the defendant and himself, and to prove his guilt of the murder subsequently done. Evidence of the act or declaration of a conspirator which relates to the conspiracy may, after proof of the conspiracy, be given against his co-conspirator. (Code of Civil Procedure, Sec. 3146, Subdivision 6; Penal Code, Sec. 2078; *State* v. *Byers,* 16 Mont. 565, 41 Pac. 708; *Harrington* v. *B. & B. M. Co.,* 19 Mont. 411, 48 Pac. 758; *Pincus* v. *Reynolds,* 19 Mont. 564, 49 Pac. 145.)

4. The defendant prayed, and it is assumed the court refused to give, the following instruction: "The rule of law is, that to warrant a conviction on a criminal charge upon circumstantial evidence alone, the circumstances should be such as to produce nearly the same degree of certainty as that which arises from direct testimony, and sufficient to exclude all reasonable doubt of the defendant's guilt. The circumstances ought to be of such a nature as not to be reasonably accounted for on the supposition of the defendant's innocence, but be perfectly reconcilable with the supposition of his guilt. The court instructs the jury, that it is an invariable rule of law, that to warrant a conviction for a criminal offense upon circumstantial evidence alone, such a state of facts and circumstances must be shown as that they are all consistent with guilt of the party charged, and such that they cannot, upon any reasonable theory, be true and the party charged be innocent." The word "nearly" made the instruction prayed for bad, and it was properly refused. (*State* v. *Ryan,* 12 Mont. 297, 30 Pac. 78.) The unobjectionable parts of it were given in the charge of the court. Other specifications of error in respect of refused instructions asked for upon the subject of circumstantial, or indirect, evidence are disposed of by the observation that the substance of them was embraced in the general charge.

5. Among the instructions given were the following: "A witness is presumed to speak the truth, this presumption, however, may be repelled by the manner in which he or she testifies, by the character of his or her testimony, or by his or her motives, or by contradictory evidence. You are instructed that your power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion and in subordination to the rules of evidence. The jury are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." (No. 19.) "A defendant in a criminal case may be sworn and may testify in his own behalf. In such a case the jury in judging of the credibility and weight to be given his testimony must take into consideration the fact that he is

the defendant and the nature and enormity of the crime of which he is accused. You are instructed that you have no right to disregard the testimony of the defendant on the ground alone that he is the defendant and stands charged with the commission of a crime. The law presumes the defendant to be innocent until he is proved guilty, by the evidence beyond a reasonable doubt, and the law allows him to testify in his own behalf, and the jury should fairly and impartially consider his testimony, under the instructions above given, together with all the other evidence in the case, and if from all the evidence the jury have a reasonable doubt as to the guilt of the defendant it is your duty to acquit him." (No. 21.) Section 2442 of the Penal Code provides that a "defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but he may be sworn, and may testify in his own behalf, and the jury in judging of his credibility and the weight to be given to his testimony, may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused. If the defendant does not claim the right to be sworn, or does not testify, it must not be used to his prejudice, and the attorney prosecuting must not comment to the court or jury on the same." Complaint is made of the word "must" in instruction numbered 21, counsel for the defendant contending that the use of this word instead of the statutory word "may" was prejudicial error. We think it was not. Jurors are in duty bound to consider all the evidence; they must, in obedience to their oaths, consider whatever tends to shed light upon the credibility of witnesses and the weight of evidence. They are not at liberty to withhold their consideration from any evidence; they must impartially consider it, and then give to it such weight as they believe it deserves, or if, after fairly considering it, they are satisfied that it is not entitled to any weight, they should in their subsequent deliberations disregard it. Counsel say that under the plain terms of the statute the jury, in judging of the defendant's credibility and the weight to be given to his testimony, are at liberty—

that is, have permission—to take into consideration the fact that he is the defendant and the nature and enormity of the crime of which he is accused, but are under no obligation to do so. If this position be tenable the following supposed instruction would correctly state the law: · "A defendant in a criminal action cannot be compelled to be a witness against himself, but he may under oath voluntarily testify in his own behalf. The defendant has availed himself of this privilege, and in judging of his credibility and the weight to be given to his testimony you may, or may not, as you see fit, take into consideration the fact that he is the defendant and the nature and enormity of the crime charged. These matters you are at liberty to exclude from any consideration whatever. The court has already charged that you must consider all the evidence, and such is the general rule of law, subject to but one exception: When you judge of the defendant's credibility and the weight of his testimony, you are under no obligation to consider, think upon, or regard, the fact that he is the defendant on trial for murder of the first degree and therefore vitally interested in the result. Such facts you may utterly eliminate and refuse to consider in judging of the credibility of the defendant as a witness and the weight to be given to his testimony." Surely the legislative assembly by the word "may" did not intend that jurors might refuse to consider matters lawfully laid before them. Upon the general principles stated in *Montana Ore Purchasing Company* v. *Lindsay, Judge,* 25 Montana Reports, 24, 66 Pacific Reporter, 715, and to avoid absurdity, we think "may" should be interpreted to mean "shall" or "must"; and such seems to have been the opinion of this court in *State* v. *McClellan,* 23 Montana Reports, 532 (59 Pac. 924, 75 Am. St. Rep. 558), where an instruction that the jury in judging of the credibility of the defendant as of a witness and of the weight to be given to his testimony *should* take into consideration the fact that he is the defendant and the nature and enormity of the crime of which he is accused, was approved. If "may" had been used instead of "must" in the instruction of which complaint is

made, we think the ordinary juror would, in the light of the other instructions, certainly have understood it to be the equivalent of "shall" or "must." Although counsel have not called attention to it, we note that from 1872 until the first day of July, 1895, when the Penal Code was adopted, the statutes of the Territory and State of Montana provided that the jury in judging of the credibility of the defendant and of the weight to be given to his testimony "shall take into consideration the fact that he is the defendant and the nature and enormity of the crime of which he is accused." (Sec. 15 of Chapter III, Criminal Laws, Codified Statutes of 1871-2, page 271; Sec. 15, Fourth Division, Criminal Laws, Compiled Statutes of 1887.) We do not think the change from "shall" to "may" made by the Code of 1895 is significant of a legislative intent to allow jurors the liberty of refusing to consider evidence or matter properly adduced before them. "Every change of phraseology, however, does not indicate a change of substance and intent. * * * The changes of phraseology may result from the act being the production of many minds, and from being compiled from different sources. Hence the presumption of a change of intention from a change of language is of no great weight, and must mainly depend on the intrinsic difference as resulting from the modification. A mere change in the words of a revision will not be deemed a change in the law unless it appears that such was the intention. The intent to change the law must be evident and certain; there must be such substantial change as to import such intention, or it must otherwise be manifest from other guides of interpretation, or the differences of phraseology will not be deemed expressive of a different intention." (Sutherland on Statutory Construction, Sec. 256.) That the legislative design was not to change the law so that "may," as permissive only, should supplant the imperative "shall," is clear.

Several questions of practice have been argued by the attorney general; but as the views expressed dispose of the appeals adversely to the defendant, we prefer to reserve them.

Let the judgment and the order refusing a new trial be affirmed.                                                   *Affirmed.*