STATE, RESPONDENT, *v.* DE LEA, APPELLANT.

(No. 2,490.)

(Submitted February 5, 1908. Decided February 13, 1908.)

[93 Pac. 814.]

*Criminal Law—Arraignment—Minutes of Court—Irregularities — Waiver — Reasonable Doubt — Definition — Instructions—Singling out Witness—Credibility of Defendant.*

Criminal Law—Arraignment—Irregularities—Waiver.
  1. The minutes of the trial of a criminal cause failed to show that the copy of the information delivered to defendant contained the names of the witnesses for the state. They did show that he asked for and obtained time to plead and afterward, without objection, pleaded to the information. *Held,* that by pleading without objection he waived the defect in the arraignment.

Same—Verdict—Jury—Calling of Names.
  2. The purpose of section 2142, Penal Code, providing that the names of the jurors must be called by the clerk when their verdict is delivered, is to insure their presence before the verdict is delivered.

Same—Irregularities—Harmless Error.

3.   Where the record in a criminal cause did not show that the jurors were not all present when the verdict was delivered, and from the minutes no other fair inference could be drawn than that they were actually present at the time, the omission from the minutes of a statement that their names were called prior to delivery of the verdict was not an error which prejudiced defendant in his substantial rights, and the irregularity may be disregarded under the provisions of sections 2320 and 2600 of the Penal Code.

Same—Verdict—Presence of Defendant—Minutes.

4.   While under section 2142, Penal Code, the fact that the defendant in a criminal cause was present when the verdict was received must affirmatively appear, minutes which show his presence during the trial up to the time the jury retired, and then recite that "defendant *thereupon* waived the polling of the jury" and "defendant *thereupon* waives time for sentence and elects to be sentenced at this time," sufficiently meet this requirement.

Same—Reasonable Doubt—Instructions.

5.   An instruction defining the term "reasonable doubt" in the language employed for that purpose in Territory v. McAndrews, 3 Mont., at page 162, and there approved and since accepted as a proper definition of those words, is not open to the objection that by it the jury were confined to a consideration of the evidence, whereas a reasonable doubt might arise from the lack of evidence.

Same—Instructions—Credibility of Defendant.

6.   While it is the general rule that a court ought not in its instructions single out a particular witness and direct the attention of the jury to his testimony, section 2442, Penal Code, makes an exception to this rule, and the court may properly instruct that the jury, in judging the credibility of one on trial for a crime and the weight to be given to his testimony, may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he stands charged.

Same—Larceny—Definition—Curing Error.

7.   The defect in an instruction which incorrectly defined "larceny" was cured by a subsequent one, which, though not technically correct, was not open to the objection urged against it by appellant.

Instructions—Review.

8.   In reviewing instructions they must be considered as a whole.

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

FRANK DE LEA was convicted of grand larceny, and appeals from the judgment of conviction. Affirmed.

*Messrs. Maury & Hogevoll,* and *Messrs. Donovan & Melzner,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Frank De Lea was convicted of the crime of grand larceny and appeals from the judgment.

1. Objections are made to the proceedings in the case. It is said the court erred:

"(a) In not causing a copy of the indorsements upon the information, including the list of witnesses, to be delivered to the defendant at the time of his arraignment.

"(b) In permitting the verdict to be filed without having the names of the jurors first called by the clerk.

"(c) In receiving the verdict in the absence of the defendant." These objections must be answered, if at all, by the record.

(a) The minutes of the trial court show: "This day, September 22d, defendant being present in person and by counsel, Mr. J. G. Brown, whose name is by the court ordered entered as counsel for defendant, and the county attorney being present on the part of the state, being then asked, defendant states that his true name is Frank De Lea as charged in the information. Defendant waives reading of the information and accepted a copy thereof, on application of Mr. J. G. Brown. Saturday, September 29th, 1906, at 10 o'clock A. M. is by the court fixed as date for the entry of a plea herein. * * * (September 29th.) This day defendant being present in person and by counsel Mr. J. G. Brown, and the county attorney being present on the part of the state, thereupon defendant pleads not guilty to the offense charged in the information, which plea is by the court ordered entered."

It is not contended that the original information does not contain the names of the witnesses for the state; but it is contended that the minutes fail to show that the copy delivered to the defendant contained the necessary indorsements. It would appear from section 1893, Penal Code, that the indorsements on the information are not considered part of the information;

but, however this may be, by asking for and obtaining time to plead, and afterward, without objecting, pleading to the information, the defendant waived these defects in the arraignment. (12 Cyc. 348; *People* v. *Lightner,* 49 Cal. 226.)

(b) The next contention is that the minutes fail to show that the names of the jurors were called before the verdict was delivered, as required by section 2142, Penal Code. The minutes do show the presence of the twelve men constituting the jury while the case was being tried. With respect to what occurred after the case was submitted the minutes recite: ''The jury retired in charge of a sworn bailiff to consider of their verdict and later returned into open court and submitted their verdict which is in words and figures as follows, to-wit: [Title of Court and Cause.] 'We, the jury in the above-entitled action, find the defendant Frank De Lea guilty of the crime of grand larceny and leave his punishment to be fixed by the court. M. L. Mustard, Foreman.' Which verdict was filed and read in open court and in the presence of the jury who on being asked state that such is their verdict.'' While these minutes do not meet the requirements of the Code, we hardly think any other fair inference can be drawn than that the jurors were, in fact, all present. Certainly there is not anything here to suggest that the jurors were not all present; and the evident purpose of the provision of section 2142 above for calling the names of the jurors is to insure their presence before the verdict is delivered. A case presenting precisely this same question, and under a similar statute, is *Norton* v. *State,* 106 Ind. 163, 6 N. E. 126. In the opinion in that case it is said:

''Under the alleged error of the court in overruling appellant's motion for a *venire de novo,* the only point made by his counsel is based upon their construction of the provisions of section 1829, Revised Statutes of 1881, and the alleged noncompliance of the trial court therewith. This section provides as follows: 'When the jury have agreed upon their verdict, they must be conducted into court by the officer having them in charge. Their names must then be called, and, if all appear,

their verdict must be rendered in open court. If all do not appear, the rest must be discharged without giving a verdict, and the cause must be tried again at the same or next term. The defendant shall have the right, in all criminal cases, to have the jury polled.' It is not claimed by appellant that the jury had not all appeared when their verdict herein was rendered in open court; but it is claimed that their names were not called prior to such rendition of their verdict. Although the statutory provision requiring that the names of the jury must be called is mandatory in form, and although we think that such provisions ought always to be strictly complied with, yet we can hardly regard the omission to call the names of the jury as a material or fatal error, unless it further appears that the jury did not, in fact, all appear at the time their verdict was rendered in open court. To such an error, conceding it to be such, as the one here complained of, section 1891, Revised Statutes of 1881, seems to us peculiarly applicable, so far as our consideration of the error is concerned. In that section it is thus provided: 'In the consideration of the questions which are presented upon an appeal, the supreme court shall not regard technical errors or defects, or exceptions to any decision or action of the court below, which did not, in the opinion of the supreme court, prejudice the substantial rights of the defendant.' In the case at bar, if the jury all appeared at the time their verdict was returned into open court, as we must assume they did, in the absence of any showing to the contrary, then we are of opinion that the omission of the court to have the names of the jury called, even if erroneous, did not prejudice the substantial rights of the appellant."

Another case identical in its facts is *People* v. *Rodundo,* 44 Cal. 538, in which it is said: "It is now claimed that the court erred in receiving the verdict without first calling the names of the jurors. The statute provides that, when the jury have agreed upon a verdict, they shall be conducted into court. 'Their names must then be called, and, if all do not appear, the rest shall be discharged without giving a verdict.' (Crim. Prac.

Act, sec. 414.) Undoubtedly it was an irregularity to receive the verdict without first calling the names of the jurors; but, if all were in fact present and declared the verdict, it was an irregularity which in no way prejudiced the defendant. Section 601 of the Criminal Practice Act provides: 'Neither a departure from the form or mode prescribed by this Act in respect to any pleadings or proceedings, nor an error or mistake therein shall render the same invalid unless it have actually prejudiced the defendant or tended to his prejudice in respect to a substantial right.' The record shows that the 'jury' returned into court and reported the verdict, and it is not even suggested by counsel that the jurors were not all present and agreed. * * * On the whole, we see no error in the case which prejudiced the defendant in respect to any substantial right, and the judgment is therefore affirmed.'' Our Penal Code contains provisions similar to those referred to by the Indiana and California courts. (See Pen. Code, secs. 2320, 2600.)

(c) The third contention is, that the minutes do not show that the defendant was present when the verdict was returned. The minutes do show the presence of the defendant during the trial up to the time the jury retired to consider of their verdict. Then, after the recital last above set forth, the minutes proceed: ''Defendant thereupon waived the polling of the jury. * * * Defendant thereupon waives time for sentence and elects to be sentenced at this time.'' The word ''thereupon'' first used in this quotation is significant in this connection. Webster defines it to mean: ''Upon that or this; immediately, at once; without delay.'' Substituting in the minutes, then, the meaning of the word ''thereupon'' for the word itself, and the minutes would say, that the jury returned into open court and submitted their verdict, which verdict was filed and read in open court and in the presence of the jury, who, on being asked, stated that such was their verdict. Upon this happening, the defendant immediately waived the polling of the jury and asked to be sentenced at this time.

The Penal Code, section 2141, provides that the defendant, if charged with a felony, must be present when the verdict is received; and it is generally held, and we think correctly, that this fact must affirmatively appear. But it must be conceded that by every fair intendment this record is a sufficient showing of the defendant's presence when the verdict was received. Just criticism may be made of the manner in which the minutes of this trial were kept. A studied effort to ignore the law could hardly have been productive of a more defective record.

2. Exception is taken to the giving of instruction No. 7, which defines a reasonable doubt in the language employed for that purpose in *Territory* v. *McAndrews*, 3 Mont. 158. The particular objection is, that the jury was confined to a consideration of the evidence, whereas, it is said, a reasonable doubt may arise from the lack of evidence; and *State* v. *Harrison*, 23 Mont. 79, 57 Pac. 647, *Coffin* v. *United States*, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481, *Brown* v. *State*, 105 Ind. 385, 5 N. E. 900, *State of North Carolina* v. *Gosnell*, 74 Fed. 734, *Smith* v. *State*, 9 Tex. App. 150, *Densmore* v. *State*, 67 Ind. 306, 33 Am. Rep. 96, and *Knight* v. *State*, 74 Miss. 140, 20 South. 860, are cited in support of this contention. But most of these cases are not in point.

In the *Harrison Case* this particular instruction now under consideration was approved. The case was reversed for the refusal of the trial court to give an instruction upon the subject of the presumption of innocence. While in the case now before us there does not appear to have been any instruction given upon the presumption of innocence, as there ought to have been, there is not any error assigned upon the failure of the court in this respect. Indeed, the record shows that an instruction upon that subject was not requested; but in the *Harrison Case* it was, and was refused. So that our consideration of instruction No. 7 is uninfluenced by the failure of the court to give an instruction upon that very important branch of the case.

In the *Coffin Case* there was a reversal for the same reason as in the *Harrison Case*.

In the *Gosnell Case* the subject is not treated at all.

In *Brown* v. *State* a somewhat similar instruction is criticised, but the judgment of conviction was affirmed. The same thing occurred in *Mackey* v. *People,* 2 Colo. 13.

In *Smith* v. *State* the instruction given was held erroneous, but upon entirely different grounds from that suggested by counsel for appellant in this case. In each of the other two cases cited, an instruction of this general character was held erroneous, for the reason now urged here. But so far as we are able to ascertain, Indiana and Mississippi are the only states in which the giving of an instruction of this general character is held to. be error.

It is the accepted rule that, before anyone can be convicted of a criminal offense, his guilt must be established beyond a reasonable doubt; but every attempt to define the apparently simple phrase "a reasonable doubt" has been attended with the greatest difficulty, and it may fairly be said that in a great majority of instances the definitions do not convey any more accurate idea than the phrase itself. So great is the difficulty, that some courts hold that it is not error for the trial court to decline any attempt at a definition. (12 Cyc. 623.)

In *United States* v. *Hopkins,* 26 Fed. 443, Judge Dick said: "The inherent imperfection of language renders it impossible to define in exact express terms the nature of a reasonable doubt. It arises from a mental operation, and exists in the mind when the judgment is not fully satisfied as to the truth of a criminal charge, or the occurrence of a particular event, or the existence of a thing."

However, in 1850, Chief Justice Shaw, of the supreme court of Massachusetts, in the celebrated case of *Commonwealth* v. *Webster,* 5 Cush. 295, 52 Am. Dec. 711, formulated a definition which for more than half a century has withstood most of the criticism, and has been adopted and followed in a very large number of courts. In substance, if not in form literally, that definition was adopted and approved by this court in *Territory* v. *McAndrews,* above, and for more than thirty years the

instruction approved in that case has been generally accepted and approved by the courts of this jurisdiction and repeatedly approved by this court. (See *State* v. *Martin,* 29 Mont. 273, 74 Pac. 725.) So far as we are aware, the present is the first instance in which the instruction has been attacked upon the ground now urged.

We think, however, that the criticism made of this instruction, by the courts above, is altogether captious, and must have had its origin in the misconception of the function of the presumption of innocence. By some of the courts it is held that this presumption is evidence introduced by the law in favor of the accused. But in *State* v. *Martin,* above, this court in a very able opinion by Mr. Commissioner Poorman, said: ''This presumption may have the effect of evidence, in that it must be overcome by evidence; but, strictly speaking, it cannot be evidence, nor can it be introduced in the case, for it is in the case from its inception. It needs no introduction. It is the safeguard which the law casts around all persons accused of crime, and the defendant cannot be reached by a verdict of guilty until this safeguard is entirely removed. This removal can only be accomplished by evidence which satisfies the minds of the jurors beyond a reasonable doubt. The presumption of innocence is in effect the very thing against which the prosecution is directed.''

This presumption of innocence surrounds every person accused of crime. And to say that this presumption is evidence introduced at the trial in behalf of the accused, implies, at least, that such person does not have that same presumption attending him prior to the trial—for instance, from the time of his arrest until the trial. The expression, ''the presumption of innocence is evidence introduced by the law in favor of the accused,'' is inaccurate and an unfortunate one. If, however, this presumption be treated merely as a safeguard with which the law surrounds every person accused of crime, the supposed defects in the definition of a reasonable doubt will at once appear more fanciful than real.

It is inaccurate to say, in the language of the supreme court of Mississippi: "Such a doubt *may* arise from a want of evidence." It always does, and of necessity must, arise from a want of evidence, by which we mean a want of sufficient evidence; for in every criminal case where there is a plea of not guilty, if the state does not introduce any evidence, the question of a reasonable doubt never arises; for there is not a court in the land but what under those circumstances would peremptorily direct a verdict of not guilty. But, if the state does offer evidence sufficient in the judgment of the trial court to go to the jury, then the jurors under their oaths must consider such evidence, and such evidence alone, in determining whether the safeguard erected by the presumption of innocence has been completely destroyed. It is completely destroyed when, and only when, the jurors can say from the evidence introduced that they feel an abiding conviction to a moral certainty of the truth of the charge against the accused. If the evidence leads to a conclusion which satisfies the judgment of the jurors, and leaves upon their minds a settled conviction of the truth of the charge, it is then their duty to so declare by their verdict. But in every such contested case their consideration is directed to the evidence introduced, and from that evidence they must say whether they still retain a reasonable doubt of the guilt of the accused. It is in this sense that it is said that a reasonable doubt is not a doubt suggested or surmised without foundation in the facts or testimony. In other words, the jurors may not predicate a doubt upon street rumor, or facts not in evidence, nor upon theories outside of the record, which may be suggested by the ingenuity of counsel, or upon a merciful inclination to permit the accused to escape, prompted by sympathy for him in his apparently unequal contest with the state.

The definition now under consideration, which is in substance that of Chief Justice Shaw, has met with widespread approval. (Hughes on Criminal Law and Procedure, secs. 2488, 3263; Hochheimer on Criminal Law, sec. 157; 12 Cyc. 491.) Speaking of this definition, the supreme court of California, in *People*

v. *Strong*, 30 Cal. 151, said: "And in the general charge of the court the jury were instructed in relation to the subject of reasonable doubt substantially in the language of Mr. Chief Justice Shaw, in the case of *Commonwealth* v. *Webster*, 5 Cush. (Mass.) 320, 52 Am. Dec. 711, which is probably the most satisfactory definition ever given to the words 'reasonable doubt' in any case known to criminal jurisprudence." And in this conclusion we agree. We do not think that the other objections to the instruction are well founded.

3. Exception is likewise taken to the giving of instruction No. 9, which is a literal copy of the first sentence of section 2442 of the Penal Code. But it is said that a court ought not to single out a particular witness and direct the attention of the jury to his testimony; and that this is the general rule is well settled and has been recognized by this court. (*Mahoney* v. *Dixon*, 34 Mont. 454, 87 Pac. 452.) But the Code, in section 2442 above, has made an exception to this general rule. That section particularly states by what standard the jury shall judge of the defendant's credibility; and, in order that they may have this standard which the law has fixed, it is necessary that it be given in a proper instruction. In support of their contention counsel for appellant cite *People* v. *Maughs*, 149 Cal. 253, 86 Pac. 187; but, as this court said in *State* v. *Farnham*, 35 Mont. 375, 89 Pac. 728, the instruction criticised in the *Maughs Case* is not the one given here. And, furthermore, California does not have a provision of the Criminal Code similar at all to section 2442 above. (See California Penal Code, Title X, Chapter II.) The instruction has received the approval of this court, and we are satisfied that it was properly given in this case. (*State* v. *Dotson*, 26 Mont. 305, 67 Pac. 938; *State* v. *Farnham*, above.)

4. Instruction No. 10 is also criticised. But this instruction, while not approved, is held in *State* v. *Penna*, 35 Mont. 535, 90 Pac. 787, not to be prejudicially erroneous, under circumstances similar to those we have here.

5. Instruction No. 12 attempts to define larceny; but, standing alone, is insufficient for that purpose. (*State* v. *Peterson,* 36 Mont. 109, 92 Pac. 302.) But this defect in the instruction is fully cured by instruction No. 17, which, though not technically correct, is not open to any objection urged against it here by counsel for appellant. It is not in any sense contradictory of No. 12, but supplementary of it. The instructions must be considered as a whole.

We find no prejudicial error in the record. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH: I agree with the result reached by Mr. JUSTICE HOLLOWAY in the foregoing opinion. But I am inclined to think, despite the fact that the definition of "reasonable doubt" therein discussed has been employed by the courts of this and other states for so many years, and has been approved, that it is not too late to discourage the practice of giving it to juries in criminal cases. It seems that the English language is inadequate to satisfactorily define the phrase "reasonable doubt." Some courts are not satisfied with the definition approved by this court. How, then, shall a jury of laymen be guided or aided by it? Perhaps the reason why the words are difficult of explanation is because they are so ordinary and simple. At any rate, the definition, although the best that has ever been given and perhaps the best that can be framed, is so complicated and involved that it is more difficult to understand than are the words the meaning of which the courts have attempted to explain.

I do not think the words "reasonable doubt" require explanation. I believe that any juror who has not the mental capacity to understand the words themselves could not possibly comprehend the definition given to them by the courts. How can it be said that a juror could not understand what is meant by a "reasonable doubt" but would know the meaning of the words

"an abiding conviction to a moral certainty," used in the definition? I think any intelligent juror will appreciate the scope of his duty when told that, before he is justified in arriving at a verdict of guilty, he must be satisfied of the guilt of the defendant from the evidence, beyond a reasonable doubt; and that no other or further charge should be given on this subject.

An experience of over twenty years at the bar and on the trial bench enables me confidently to assert that, in criminal causes, more confusion in the minds of jurors, and more illogical verdicts, result from attempts by the court to define a reasonable doubt than from all other causes, save alone the conflict of testimony. Added to this, it is matter of common knowledge in the profession that this definition is seized upon by unscrupulous counsel, representing defendants oftentimes palpably guilty upon the evidence, and industriously repeated and reiterated, to impress upon the jurors that the words have some deeply occult meaning, known only to those engaged in the trial of criminal cases, which they, as jurors, are bound, on their oaths, to apply, or find the defendant not guilty; and that, having solemnly sworn, both generally and in answer to numerous questions touching their competency to sit as jurors, to give the defendant the benefit of every reasonable doubt, as defined by the court, there attaches to their deliberations some new and wonderful quality, pertaining more to deity than to mortals, prohibiting them from arriving at a conclusion by any mental process ever before exercised by them; that they must, as jurors, discard their everyday habits of thought and judgment, and use their minds in an entirely different manner from that which, as men, they would employ in their own important affairs. I believe the system of paternalism practiced toward jurors today, upon the theory apparently that they are as incapable of forming an intelligent judgment as were the yokels of four hundred years ago, should be abandoned, lest in trying to explain the meaning of the most common words and terms we convey to jurors the idea that the law, instead of being founded in common sense, deals in nothing but technicalities.

We hold in this state, in common with many other states in the Union, that it is error for the trial court, usually presided over by a lawyer of experience and ability, to comment in any manner upon the weight of the evidence; and the application of the doctrine has been carried, in my judgment, to the extent of absurdity. But we give instructions to juries that would puzzle a scholastic logician to analyze; and then criticise the jury system. I have talked with highly intelligent jurors—men who were successful in their private affairs—who seemed to feel that a juror must discard all human attributes, and change all his usual mental habits in order to arrive at a verdict in a criminal case according to law. I have heard jurors say, in defense of a verdict of acquittal, in a case where every unsworn person who heard all of the evidence had no doubt whatsoever of the guilt of the defendant: "It was the only thing we could do under the charge of the court." And this after the court had laboriously instructed the jury that they were the sole and exclusive judges of the facts in the case, and that the instructions were merely a guide to the law. This is one of the principal reasons why we have mistrials and wrong verdicts in plain cases involving enormous expense, and why the popular defense of insanity can be successfully interposed in so many murder trials.

After all, a reasonable doubt is not a thing to be described. It is a state of mind, not, ordinarily, to be accounted for by pointing out any particular testimony in the record. Doubts come and go, and reappear during the progress of the trial. The jurors are admonished by the court not to make up their minds concerning the guilt or innocence of the accused until the case is finally submitted to them (an admonition admirable in theory, but ridiculous in practice, because usually impossible of obedience). More paternalism. And, while the jury knows nothing of it, the trial judge is, in fact, almost powerless. He is a mere puppet in the trial, an umpire whose authority is limited to passing upon questions of admissibility of evidence. If he gives to the jury anything more than abstract propositions of law (and the appellate courts say he should not give those),

he is accused, and generally convicted, on appeal, of commenting upon the weight of the evidence.

A juror cannot tell when the reasonable doubt first lodged in his mind.   Certainly it was not, in most instances, after the case was finally submitted to him.   I undertake to say that every honest juror who, upon the whole evidence, has in his heart a reasonable doubt of the defendant's guilt, will act upon it, without analysis or application of definition.   He will unconsciously heed it without seeking to explain it.   When his mind harbors a doubt that prevents his conscientiously voting guilty, that doubt will be expressed in a vote for acquittal.

I maintain, therefore, that we should give our trial judges credit for the integrity, learning, discretion and consideration for their oaths of office that they in reality possess, and that our jurors should be treated as men of intelligence, and not as children.