STATE, RESPONDENT, *v.* RUSSELL, APPELLANT.

[Argued March 15, 1893. Decided, April 17, 1893.]

CRIMINAL LAW—*Change of venue—Prejudice.*—An application for a change of venue in a criminal case, when made upon the ground that a large number of jurors who were examined as to their qualifications stated that they had formed opinions as to the guilt or innocence of the defendant; that such statements made in the presence of jurors who had been accepted tended to prejudice the latter against the defendant and that the inhabitants of the town where the trial was being held were particularly prejudiced against defendant, and were likely to communicate this prejudice to jurors summoned from the vicinity, is properly denied where such jurors as had been accepted stated, under examination by the court, that they had not been prejudiced by the statements of the other jurors, and the court offered to excuse from the box jurors who resided in the town.

SAME—*Dying declarations—When admissible.*—Dying declarations are admissible in evidence when all the facts and circumstances surrounding the declarant at the time of making the declarations show them to have been made under the sense of impending death, notwithstanding the declarant may not have said he was without hope of recovery, or was dying, or going to die.

SAME—*Same.*—Where it appeared that at the time dying declarations were made deceased was mortally wounded and in a dying condition, but was rational, and appreciated his condition, and stated that he wanted a Christian burial, and

where he wanted to be buried, and that he wanted a headstone at his grave; told where his money was, and by whom and how he was wounded, a sufficient foundation for the admission of the declarations is shown.

SAME—*Witness for state—Refusal to call.*—It is not error for the court to refuse to require the state to call a witness whose name was indorsed on the information where she was not an eyewitness and was not present at the time of the shooting and the materiality of her evidence was not shown.

SAME—*Murder—Sufficiency of evidence.*—Evidence in the case at bar reviewed and held to amply sustain and justify the verdict and judgment.

*Appeal from Seventh Judicial District, Yellowstone County.*

Conviction for murder. Defendant was tried before MIL-BURN, J. Affirmed.

*Middleton & Light,* for Appellant.

*Henri J. Haskell,* Attorney-General, for the state, Respondent.

PEMBERTON, C. J.—The appellant was convicted of the crime of murder in the second degree at the September term, 1892, of the district court of the seventh judicial district in the county of Yellowstone; and on the eighth day of October, 1892, was, by the judgment of said court, sentenced to imprisonment in the state prison for a term of twenty-five years. The appellant moved the court for a new trial, which was denied. From the order refusing a new trial, and from the judgment of the court, this appeal is prosecuted.

The first important error assigned is, the refusal of the court below to grant appellant's petition for a change of venue from Yellowstone county. It appears that after the trial had commenced, and considerable progress had been made in an effort to obtain a jury, the counsel for appellant came to the conclusion that a fair trial could not be had in said county, and presented a petition for a change of venue, based upon the alleged "interest, prejudice, and bias of the people of said county." This petition was supported by the affidavit of two of the counsel for the appellant. This affidavit is to the effect that during the time an effort was being made to procure a jury, a large number of persons were called into the jury-box, and examined as to their qualifications to act as jurors in the case; that a large proportion of such persons, upon said examination, stated

that they had formed and expressed decided opinions as to the
guilt or innocence of the prisoner at the bar ; that such state-
ments by such persons on their examination, made in the pres-
ence of the jurors in the box who had not been challenged for
cause, had the effect, in affiant's opinion, to prejudice such
jurors as were in the box against the appellant to such an
extent as to prevent his having a fair trial before such jury;
that the inhabitants of Billings were especially hostile to the
appellant, and prejudiced against him to such an extent that,
in the opinion of affiants, he could not have a fair trial ; and
that the prejudice of the inhabitants of Billings was likely to
be so communicated to persons summoned as jurors from its
immediate vicinity as to prevent them from according appellant
a fair trial, if accepted as jurors in the case ; that there was
considerable unfriendly talk among the people of Billings
against appellant; and that for these reasons affiants believe
the prisoner could not have a fair trial in that county. The
court also heard oral evidence of other witnesses to substan-
tially the same effect. To meet this evidence, the court ex-
amined each juror in the box, as to whether or not the
examination of persons called as jurors in their presence had
an effect in prejudicing their minds against the prisoner.
Each of said jurors answered in the negative. The court, in
addition thereto, of its own motion, offered to excuse from the
jury all persons who resided in Billings; two such persons
being in the box. To this offer the counsel for the appellant
objected. If it is true, as contended by appellant, that in crim-
inal cases, where a large number of persons are examined, in
the presence of each other, as to their qualifications to sit as
jurors, and a large or any portion of them state that they have
formed or expressed such opinion as to the guilt or innocence
of the person to be tried as to disqualify them as jurors, it
shall be considered as a sufficient reason to prejudice those
who have no opinions, and thus disqualify them from being
considered fair and competent jurors, then we are at a loss to
know how a jury can ever be organized in any important crim-
inal case in any community. In almost every important
criminal case a very large proportion of the people living in
the immediate vicinity of the place where the crime is alleged

to have been committed form such opinions, from becoming familiar with the facts, as to disqualify them from acting as jurors in the trial of the case, and these opinions are as likely to be favorable as hostile to the accused. But how can it be rightfully contended that the examination of such persons, and their statements that they have such disqualifying opinions, in the presence of persons who do not have such opinions, will prejudice and disqualify those that are free from such disqualifications to such an extent as to endanger a fair trial of the person accused of the crime? We do not think this position can be sustained by reason or law. The court seemed to have taken every necessary precaution to assure the appellant a fair trial in this respect.

And the verdict of the jury, finding the appellant guilty of murder in the second degree, and leaving the punishment to be fixed by the court, when they could, if so inclined, for any reason, have assessed his punishment at imprisonment for life, tends to show that the appellant and his counsel were mistaken as to the prejudice alleged as a ground for change of venue, and that the view of the court was justified in its ruling in this regard. We are unable to see that the court below abused that sound judicial discretion required of trial courts in such proceedings. The law governing change of venue is well settled in this state in (*Kennon* v. *Gilmer*, 5 Mont. 257; 51 Am. Rep. 45), and (*Territory* v. *Manton*, 8 Mont. 95); and these authorities support the action of the court below in this case.

2. It is urged that the court below erred in admitting the evidence of the dying declaration of the deceased. The appellant objected on the ground that a sufficient foundation had not been shown to render the dying declaration admissible. The evidence does not show that deceased actually said he was without hope of recovery, or that he was going to die. The evidence of the surgeon who attended him is to the effect that, a short time before he died, deceased frequently said, " My God, boys! I am killed." " Oh, boys! I am shot through the guts." The evidence of the surgeon shows he was mortally wounded, and was in a dying condition when these expressions were used, and that he was rational, and appreciated his condition. Harry Ramsey, who was with him just before

his death, testified that the deceased was rational, and talked to him as if he knew that he was in a dying condition, but does not remember the exact words deceased used. That the deceased stated he wanted a Christian burial; told where his money was, and who had it; that he wanted to be buried at Billings; wanted a headstone, with his name on it, placed at his grave, so that, if his friends ever wanted to take him up, they could do so. There is no evidence that indicated that he had any hope of recovery. That he stated by whom and how he was wounded, and a few moments thereafter died. The principal objection urged to this evidence is that the declarant did not expressly state that he had no hope of recovery, or was going to die. We do not think that it was essential to the admissibility of this evidence that he should have so expressly stated.

In 1 Greenleaf on Evidence, 14th ed., § 158, the doctrine governing the admissibility of dying declarations as evidence is thus stated: " SEC. 158. Must be under a sense of impending death. It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death; but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved by the express language of the declarant, or to be inferred from his evident danger, or the opinions of medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to in order to ascertain the state of declarant's mind." To the same effect, see *People* v. *Taylor*, 59 Cal. 640; *Hill* v. *State*, 41 Ga. 484; Wharton's Criminal Evidence, 8th ed., § 282; 7 Am. & Eng. Ency. of Law, 107, 109, note 1, and cases cited.

These authorities all hold that if all the facts and circumstances surrounding the declarant at the time of making the declarations show them to have been made under the sense of impending death, notwithstanding declarant may not have said he was without hope of recovery, or was dying, or going to die, then such declarations are admis-

sible in evidence. The facts and circumstances surrounding the declarant in this case at the time of the making of the declaration warrant the conclusion that they were made under a sense of impending death, and, we think, were properly admitted as evidence to the jury.

3. It is also urged as error in the court below that the prosecuting attorney had indorsed on the information the name of one Mollie Dalton as a witness, and that on the trial he declined to call her as a witness for the state, and that the court refused to require him to do so. The evidence shows that Mollie Dalton was not an eyewitness to the transaction, was not present at the time of the shooting, and the materiality of her evidence is nowhere shown. There is nothing in the record to show that this witness comes within the rule of any of the authorities cited or applicable to support appellant's contention. The attitude of this witness to the case does not bring her within the rule announced in the case of *Territory* v. *Hanna*, 5 Mont. 248. In that case the witness was present during the commission of the crime, and was so stated to be present by the prosecuting attorney on stating his case to the jury. The facts here are entirely different. We think the court went fully as far in *Territory* v. *Hanna* as it was authorized to go. But that case is not authority in this case, for the reason that the facts are widely different. In this case the evidence shows that the witness was not present at the shooting, and her examination by the appellant showed her testimony to have been immaterial. We see no error in the action of the court in this respect.

4. It is contended that the evidence does not sustain or justify the verdict and judgment of the court below. There is no controversy in this case as to the shooting, and its fatal result, or as to the identity of the slayer. The killing appears to have been unnecessary There was no effort on the part of the appellant to avoid the killing. There is no evidence of danger to the life of appellant, or of his receiving great bodily harm at the hands of the deceased, at the time of the shooting. The deceased was wholly unarmed. He was a stranger, comparatively, in the house, at the time of the shooting, and evidently intoxicated. The appellant was armed, in the company

of his friends and acquaintances; and, if not actually inclined, certainly it does not appear he was disinclined, to enter into the difficulty that resulted in his killing the deceased. The actions of the appellant in failing to disclose himself to the officers, in whose presence he was, after the shooting, when such officers were looking and inquiring for the man who did the shooting, and his escape, are hardly consistent with the theory of self-defense or accidental shooting. The principal witnesses of the state were all intimate friends and acquaintances of the appellant, and their testimony was confessedly as strong in behalf of the appellant as they could consistently make it. But taking into consideration the dying declarations of the deceased, and all the facts and circumstances of the case, as shown by the record, we are of the opinion that the evidence amply sustains the verdict of the jury and the judgment of the court below. The judgment of the court below is affirmed, and it is ordered that the same be carried into effect according to the terms thereof.

*Affirmed.*

HARWOOD and DE WITT, JJ., concur.