STATE, RESPONDENT, *v.* CREAN, APPELLANT.

(No. 2,890.)

(Submitted March 6, 1911. Decided March 13, 1911.)

[114 Pac. 603.]

*Criminal Law—Homicide — Information — Sufficiency — Manslaughter—Variance—Evidence—Burden of Proof—Instructions — Presumption of Innocence — Dying Declarations— Admissibility—Hearsay—Appeal.*

Homicide—Information—Sufficiency.
    1. An information stating that defendant unlawfully, feloniously, willfully, premeditatedly, deliberately and of his malice aforethought shot and killed E. M., a human being, sufficiently charged murder.

Same—Manslaughter—Information—Sufficiency.
    2. *Held*, that the information referred to in paragraph 1 above, when stripped of the terms conveying the idea of deliberation, premeditation and malice, sufficiently charged manslaughter, and that therefore the jury could properly find accused guilty of the lesser offense, under section 9326, Revised Codes.

Homicide—Pleading and Proof—Variance—Surplusage.
    3. The information charged that defendant shot the deceased, and that the latter died, in J. county. The evidence disclosed that while the shooting occurred in J. county, the deceased died in a neighboring one. *Held*, that the jurisdiction of the offense having been properly laid in

(47)

J. county (Rev. Codes, sec. 9020), it was unnecessary to allege or prove that deceased died in that county; that such allegation was surplusage, and that therefore, there was not any variance.

Criminal Law—Variance—What Constitutes.

4.    A variance in criminal law refers to a disagreement between the allegations in the information and the proof, with reference to some matter which is legally essential to the charge.

Same—Reasonable Doubt—Correct Instruction.

5.    An instruction on the question of reasonable doubt, substantially the same as that approved in *Territory* v. *McAndrews*, 3 Mont. 158, *held* not open to objection.

Same—Instructions—Reasonable Doubt.

6.    The paragraph in an instruction on reasonable doubt, that "a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjecture, as to a possible state of facts different from that established," *held* simply an admonition that jurors could not go outside of the evidence introduced, in search of something upon which to base a reasonable doubt of defendant's guilt, and not to have been prejudicial to him.

Same—Justification—Quantum of Proof.

7.    Where the commission of the homicide by the defendant was proved, the evidence on the part of the prosecution tending to show that the killing constituted murder, and the defense was that the killing was justifiable, an instruction that the burden of proving circumstances of justification lay upon defendant, the *quantum* of proof thus imposed upon him being only such, however, as upon the whole case would raise a reasonable doubt of his guilt, was correct.

Same—Instructions—Presumption of Innocence.

8.    Under the rule that the refusal of an instruction is not error if the substance thereof was given in other paragraphs of the charge, the court's refusal of a tendered instruction that the presumption of innocence is a fundamental and important part of the law of the land, and should not at any stage of the trial be ignored, etc., was not erroneous.

Same—Dying Declarations—Preliminary Proof—Presence of Jury—Discretion.

9.    Whether the trial court should or should not excuse the jury during the preliminary inquiry touching the admissibility of a dying declaration in evidence was a matter within its sound discretion, and in the absence of any showing of abuse thereof its ruling will not be disturbed on appeal.

Same—Dying Declarations—Preliminary Proof—Sufficiency.

10.    It is not necessary to the introduction of a dying declaration that it be first shown that the declarant was *in extremis,* by evidence independently of the declaration itself; it is sufficient if the evidence, whether given by the declarant or others, shows that it was made under a sense of impending death.

Same—Dying Declarations—Admissibility.

11.    Statements of deceased in his dying declaration that the shooting was without provocation, that there was not any trouble between him and defendant, and that the declarant was not armed at the time he was shot, were not objectionable as conclusions, opinions or mere matters of belief, but were admissible in evidence as a part of the *res gestae.*

Hearsay Evidence—What Does not Constitute.

12.    Where a witness could answer every question propounded to him of his own knowledge, and the value of his testimony did not depend

in any degree upon the veracity or competency of any other person, his answers were not objectionable as hearsay.

Homicide—Manslaughter—Theory of Case—Appeal.

13.   Defendant was charged with murder in the first degree and convicted of manslaughter.  He acquiesced in the theory of the case that there was evidence upon which a verdict of manslaughter might be predicated, and did not object to instructions defining manslaughter and distinguishing it from murder, and telling the jury, *inter alia,* that they might find defendant guilty of murder in either of its degrees, or manslaughter, etc.  *Held,* that he was not in any position to complain that the jury did not find him guilty of a more serious offense, but was bound by the theory upon which the case was tried.

Criminal Law—Appeal—Extent of Review.

14.   The supreme court will not interfere with a judgment of the district court in a criminal cause, unless the substantial rights of the defendant have been prejudicially affected.

*Appeal from District Court, Jefferson County; Llew. L. Callaway, Judge.*

CORNELIUS CREAN was convicted of manslaughter and appeals from the judgment and an order denying him a new trial. Affirmed.

Cause submitted on briefs of counsel.

*Mr. J. E. Healy,* and *Mr. M. F. Canning,* for Appellant.

Will a verdict of manslaughter be supported under the information?  Counsel for defendant submit that it is well settled in Montana, and at common law, that under such an information as is set forth in *State* v. *Metcalf,* 17 Mont. 417, 43 Pac. 182, a person may be convicted of manslaughter, or any assault, such as might be alleged therein.  We concede this proposition, and urge it as the basis of our argument.  Is the form used in the information in this case a substitute for a common-law indictment for murder?  This form of information has been used in California, and has been sustained in that state as charging murder.  (*People* v. *Hyndman,* 99 Cal. 1, 33 Pac. 782.)  But this form is subject, we submit, to all the limitations and restrictions which go with the rules relating to charging crimes in the language of the statute.  (See *McGinniss* v. *State,* 16 Wyo. 72, 91 Pac. 939.)

43 Mont.—4

That manslaughter under our law is not included in the crime of murder, see *State* v. *Johnson,* 23 N. C. 354, 35 Am. Dec. 742, where it was said: "There can be no such thing in law as a killing with malice, and also upon the *furor brevis* of passion; and provocation furnishes no extenuation, unless it produces passion. Malice excludes passion; passion presupposes the absence of malice. In law they cannot coexist." This language was quoted with approval in the case of *State* v. *Sloan,* 22 Mont. 293, 56 Pac. 367, and the rule thus laid down applies to voluntary and not to involuntary manslaughter. The information herein, being a legal definition of the crime of murder and nothing more, cannot therefore include the further meaning that it contains a crime which is separately defined and which "cannot coexist" with it. In some of the states there is a specific statute which especially says that manslaughter is included within murder, or at least uses language similar to our statute defining assault in the third degree. (See *Smith* v. *Territory,* 14 Okl. 162, 77 Pac. 188.) We have no such statute in Montana. Section 9326, Revised Codes, is the only one upon which the prosecution can expect to justify the verdict of manslaughter in this case. But we submit that the words "necessarily included" therein found cannot be read or made to reach, so far as to say that an offense which cannot coexist with murder is either included—or necessarily included—within the legal charge of murder in the language of the statute. If the facts were set up, as at common law, then the offense would be included—necessarily included.

In the first part of the paragraph of the charge relating to reasonable doubt, the jurors were told that the reasonable doubt, the existence of which, in their minds, should lead them to acquit the defendant, should so exist in their minds as jurors, while in the last paragraph they were practically told that they might consider the case as men, and that their oaths as jurors added nothing to their duties. This, of itself, we think both confusing and erroneous. (*Adams* v. *State,* 34 Fla. 185, 15 South. 905 (909); *Thomas* v. *State,* 74 Ark. 431, 86 S. W. 404; *Siberry* v. *State,* 133 Ind. 677, 33 N. E. 681 (685); *Lillie* v. *State,* 72 Neb. 228, 100 N. W. 316 (322).)

A declaration cannot be admitted as a dying declaration unless it be shown in some manner that deceased was conscious of approaching death.   (*Brennan* v. *People,* 37 Colo. 256, 86 Pac. 79; *Fuqua* v. *Commonwealth,* 24 Ky. Law Rep. 2204, 73 S. W. 782; *State* v. *Vaughan,* 152 Mo. 73, 53 S. W. 420; *Lyles* v. *State,* 48 Tex. Cr. 119, 86 S. W. 763; *State* v. *Daniels,* 115 La. 59, 38 South. 894; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411.)   Dying declarations, consisting of conclusions, opinions and beliefs, which would not be received if the declarant were a witness, are not admissible.   (10 Ency. of Law, 2d ed., 377; *State* v. *O'Shea,* 60 Kan. 772, 57 Pac. 970; *Jones* v. *Commonwealth,* 20 Ky. Law Rep. 335, 46 S. W. 217; *Berry* v. *State,* 63 Ark. 382, 38 S. W. 1938; *Jones* v. *State,* 79 Miss. 309, 30 South. 759; *Williams* v. *State,* 40 Tex. Cr. 497, 51 S. W. 220; *State* **v.** *Burnett,* 47 W. Va. 731, 35 S. E. 983.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. J. A. Poore,* Assistant Attorney General, for Respondent.

Will the verdict of manslaughter be supported under the information?   Under the provisions of section 9326, Revised Codes, the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.   While it is true that manslaughter is not a degree of murder, yet the offense is necessarily included in the charge of murder, and if the information is sufficient to sustain a charge of murder, it will support a verdict of manslaughter.   (*People* v. *Muhlner,* 115 Cal. 303, 47 Pac. 128; *People* v. *McFarlane,* 138 Cal. 481, 71 Pac. 569, 72 Pac. 48, 61 L. R. A. 245.)   There is no doubt but what the information is sufficient to sustain a verdict of murder, and this is not questioned by appellant.   Allegations sufficient for a common-law indictment for murder are sufficient for an information under the statute.   (*State* v. *McGowan,* 36 Mont. 428, 93 Pac. 552; *State* v. *Lu Sing,* 34 Mont. 31, 85 Pac. 521, 9 Ann. Cas. 344.)

The jury were correctly instructed as to murder in the first degree, murder in the second degree and manslaughter; and they

were also instructed that if the evidence, under the instructions of the court, would warrant or require it, they might find defendant guilty of murder in the first or second degree or manslaughter, or not guilty, to which instruction no exception was taken or objection made by defendant. The jury were the judges of the evidence, and were correctly informed of the law, and it was for them to decide of what offense, if any, the defendant was guilty. The evidence at least warranted a verdict of manslaughter, and the information will support the verdict.

The instruction on reasonable doubt is practically the same instruction on reasonable doubt given in the case of *Territory* v. *McAndrews,* 3 Mont. 162, and upheld by this court as correctly stating the law. (*State* v. *Gleim,* 17 Mont. 31, 52 Am. St. Rep. 655, 41 Pac. 998, 31 L. R. A. 298; *State* v. *Martin,* 29 Mont. 281, 74 Pac. 725; *State* v. *Harrison,* 23 Mont. 79, 57 Pac. 647; *State* v. *De Lea,* 36 Mont. 531, 93 Pac. 814.) The cases cited by appellant in support of his objection are not in point, for the reason that the instruction on reasonable doubt considered in those cases in effect placed the burden on the defendant to furnish to the jury reasons for his acquittal, instead of giving him the benefit of presumption of innocence. The instruction in the case at bar is open to no such objection.

As to whether or not the dying declaration in question here was made under a sense of impending death, in order to be admissible, is a question of fact for the court. (*State* v. *Roberts,* 28 Nev. 350, 82 Pac. 100; *State* v. *Byrd,* 41 Mont. 604, 111 Pac. 407; 21 Cyc. 986.) And the court had a right to determine this from all the surrounding facts and circumstances as well as from the declaration itself. (*State* v. *Byrd, supra;* 2 Wigmore on Evidence, sec. 1442; 4 Ency. of Ev. 957.)

Dying declarations which have been reduced to writing by a competent person at the instance of the declarant, or with his consent, and which have been approved and signed by him, may be proved by such writing. (4 Ency. of Ev. 1008; *State* v. *Kindle,* 47 Ohio St. 358, 24 N. E. 485; *King* v. *State,* 91 Tenn. 617, 20 S. W. 169; *Turner* v. *State,* 89 Tenn. 547, 15 S. W. 838.) Upon the question of the admissibility of a dying declaration, the

appellate court will not reverse the decision of the trial court unless it is clearly erroneous, and will merely inquire whether or not there is some evidence to support such a decision.   (4 Ency. of Ev.  890, and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was charged by an information with the crime of murder in the first degree, convicted of manslaughter, and has appealed from the judgment and from an order denying him a new trial.

1. The first assignment argued in the brief of counsel for appellant is that the information does not support the judgment. [1] Briefly paraphrased, the information charges that the defendant unlawfully, feloniously, willfully, premeditatedly, deliberately and of his malice aforethought shot and killed Emil Martilla, a human being.  This sufficiently charges murder as defined in section 8290, Revised Codes.  (*State* v. *Hliboka,* 31 Mont. 455, 78 Pac. 965.)

But it is urged that manslaughter is not necessarily or at all included in the crime of murder under our Code, and that section 9326, Revised Codes, cannot apply to a case of this character. The test to be applied under statutes similar to the last one mentioned above is: Does an information in describing the greater offense necessarily contain all the essential elements of an information for the lesser?  "Murder is the unlawful killing of a human being, with malice aforethought."  (Section 8290.)  "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing  *  *  *  is murder of the first degree," etc. (Section 8292.)  "Manslaughter is the unlawful killing of a human being without malice.  *  *  *  "  (Section 8295.)  The information before us clearly charges the unlawful killing of a [2] human being, and stripped of the terms used to convey the idea of deliberation, premeditation, and malice, sufficiently charges manslaughter.  That murder in the first degree, as defined in our Code, necessarily includes manslaughter, is recog-

nized generally. (*State* v. *Nielson,* 38 Mont. 451, 100 Pac. 229; *Pigg* v. *State,* 145 Ind. 560, 43 N. E. 309; *People* v. *Dolan,* 9 Cal. 576; *People* v. *Muhlner,* 115 Cal. 303, 47 Pac. 128; 22 Cyc. 469.)

2. Concerning Martilla, a witness for the state was asked: "What time did he die?" An objection by counsel for the defendant was overruled. The evidence showed that Martilla was shot at Comet, in Jefferson county, but died in Silver Bow county. The information charges that he was shot and that he died in Jefferson county; and it is claimed that there is a material variance between the pleading and proof. While the objection to the question asked does not raise the question of variance, yet, assuming that it does, there is not any merit in the contention made. Section 9020, Revised Codes, provides: "The jurisdiction of a criminal action for murder or manslaughter, when the injury which caused the death was inflicted in one county, and the party [3] injured dies in another county, or out of the state, is in the county in which the injury is inflicted." Having properly laid the jurisdiction of the offense in the county where the fatal shot was fired, it was unnecessary to allege where the deceased died, and the allegation that he died in Jefferson county may be disregarded as surplusage. A variance within the meaning of the [4] term as applied to criminal law refers to a disagreement between the allegations in the information and the proof, with reference to some matter which is legally essential to the charge. (22 Cyc. 450.)

3. Instruction 32, given by the court, cannot be commended; but, generally speaking, it is in substance the same as the [5] definition of reasonable doubt given in *Commonwealth* v. *Webster,* 5 Cush. 320, 52 Am. Dec. 711, approved in *Territory* v. *McAndrews,* 3 Mont. 158, and followed in many later cases. One paragraph in the instruction is criticised as assuming a fact in dispute. It follows: "A juror is not allowed to create sources [6] or materials of doubt by resorting to trivial and fanciful suppositions and remote conjecture, as to a possible state of facts different from that established by the evidence." It seems to us, however, plain enough that by this instruction the court meant merely to remind the jurors that they could not go outside of

the evidence introduced in search of something upon which to base a reasonable doubt of defendant's guilt, and that the jurors must have so understood.

4. In instruction 33 the court gave section 9282, Revised Codes, as follows: "Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof *on the part of the prosecution* tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." And this was followed by instruction 34, which reads: "As to the amount of evidence necessary to be introduced by the defendant so as in law to mitigate, excuse, or justify the homicide, you are instructed it must be at least sufficient to create in the minds of the jury, upon a consideration of all the evidence in the case, a reasonable doubt." It is urged that in instruction 34 the court in effect told the jury that the burden of proof was upon the defendant. The commission of the homicide by the defendant [7] was proved; in fact, it was tacitly admitted at least by the defendant himself. The defense sought to be made was that the killing was justifiable. The evidence on the part of the prosecution tended to show that the killing amounted to murder. Therefore, under section 9282 above, the burden was upon the defendant to prove circumstances of mitigation or that justified or excused the killing (*Territory* v. *McAndrews,* above), and in instruction 34 the court correctly told the jury that the *quantum* of proof thus imposed upon the defendant was such only as upon the whole case made would raise a reasonable doubt of his guilt. (*People* v. *Bushton,* 80 Cal. 160, 22 Pac. 127, 549; 21 Cyc. 1014, and cases cited.)

5. At the trial defendant tendered his instruction No. 5, as follows: "You are instructed that the presumption of innocence is not an idle form. It is a fundamental and important part of the law of the land, and should not at any stage of your investigations be lost sight of or ignored; and, unless your minds are convinced of defendant's guilt to a moral certainty, and to the exclusion of all reasonable doubt as to his innocence from all the

evidence adduced in this case and considered by you, as well as that of the defense, you must find the defendant not guilty." The instruction was refused, and error is predicated upon the ruling. In instruction No. 2, given, the court charged: "No presumption is raised by the law against him [defendant], but every presumption of law is in favor of his innocence, and in order to convict him of the crime charged against him, or of any lesser offense included therein, every material fact necessary to constitute such crime, or any lesser offense included therein, must be proven by the state by competent evidence beyond a reasonable doubt; and if the jury entertain a reasonable doubt upon any fact or element necessary to constitute the crime charged, or any lesser offense included therein, it is your duty to give the prisoner the benefit of such doubt and acquit him." We think this instruction fully covers the subject matter of defendant's requested instruction No. 5 above. "It is not error to refuse to give [8] instructions asked for, however correct or applicable, if they have in substance already been given in the charge of the court." (*Territory* v. *McAndrews,* 3 Mont. 158; *State* v. *Martin,* 29 Mont. 273, 74 Pac. 725.)

6. Upon the trial, the dying declaration of deceased was offered in evidence. Counsel for the defendant requested the court to excuse the jury pending a determination as to the admissibility of the declaration. This the court refused to do. Whether the [9] jury should or should not be excused during the preliminary inquiry was a matter entirely within the sound discretion of the trial court, and, in the absence of any showing of abuse of that discretion, the ruling will be affirmed. (5 Wigmore on Evidence, p. 137; 21 Cyc. 985.) It is urged, however, that the declaration was inadmissible, (1) because there was no preliminary proof that deceased at the time of making it was *in articulo mortis;* and (2) that the declaration itself does not show that the deceased had abandoned all hope of recovery. Prior to offering the declaration, the state had shown that Martilla's wound was such that it would necessarily be fatal; that the declaration was made on July 30; that Martilla died on August 2; that the declaration was made in the presence of the county

attorney of Silver Bow county and other witnesses, was reduced to writing, read over to Martilla and signed by him. A part of the declaration reads as follows: "Q. Have you given up all hope of recovery? Have you given up all hope of getting well? You expect to die, do you? A. Oh, yes. Q. You don't think there is any chance for you to get well? A. No; I don't. Q. No chance at all? A. No. Q. Do you believe in a Supreme Being—in a God? Do you think you will have a hereafter? A. Yes, sir. * * * Q. And the statement you make is true, is it? A. Yes, sir. Q. You realize that you must tell the truth on an occasion of this kind, do you? A. Yes, sir; I tell the truth. Q. When you die, you expect, then, that you would be punished if you are not telling the truth—is that the idea? A. Yes, sir. Q. Has the doctor told you that you wouldn't live? A. Yes, sir; told me, and I know that. Q. You know it yourself, do you? A. Yes, sir."

It is not necessary to the introduction of a dying declaration that it be shown that the declarant was *in extremis* by evidence [10] independently of the declaration itself. (21 Cyc. 982.) In fact, it was formerly assumed that any evidence of the condition of the deceased, other than his own statement, was inadmissible; but the rule now is well settled that the party offering the evidence may avail himself of any means by which the declarant's condition can be shown; and if the evidence, whether given by the declarant or others, shows that the declaration was made under a sense of impending death, the object has been attained. (2 Wigmore on Evidence, sec. 1442.) The evidence in this instance meets the requirements of the rule, and was properly received. (*State* v. *Russell,* 13 Mont. 164, 32 Pac. 854; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411; *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407.)

After the written declaration was admitted as a whole, the defendant moved to strike out certain portions of it. The declaration as admitted consists of questions propounded by the county attorney and the answers thereto given by the deceased. Generally speaking, the motion to strike in each instance was based upon the contention that the matters referred to do not

relate to the cause of death. While section 7887, Revised Codes, provides that evidence may be given in criminal actions of the act or declaration of a dying person, made under a sense of [11] impending death, respecting the cause of his death, this is but declaratory of the common law, and has generally been held to be sufficiently broad to comprise the facts and circumstances of the killing, and such other facts and circumstances, immediately surrounding and attending it, as properly form a part of the *res gestæ*. (*Leiber* v. *Commonwealth*, 9 Bush (Ky.), 11; *White* v. *State*, 100 Ga. 659, 28 S. E. 423; 3 Rice on Evidence, 533; 21 Cyc. 974.) The argument in the brief is that the portions of the declaration sought to be stricken are the expression of opinion, or belief, or the conclusion of the declarant. Whether a mere opinion, conclusion, or belief of the declarant can or cannot be admitted as a part of a dying declaration we need not stop to consider, though a reference to 2 Wigmore on Evidence, section 1447, clearly shows the absurdity to which the courts have heretofore gone in excluding dying declarations. The portions of this statement to which this objection is directed contain the declarations, repeated in different forms, that the shooting was without provocation, that there was not any trouble between the deceased and the defendant, and that the deceased was not armed at the time of the shooting. Similar statements have been passed upon by the courts frequently, and are generally held to be statements of facts, and not conclusions, opinions, or mere matters of belief. (*Sullivan* v. *State*, 102 Ala. 135, 48 Am. St. Rep. 22, 15 South. 264; *White* v. *State*, above; *Boyle* v. *State*, 105 Ind. 469, 55 Am. Rep. 218, 5 N. E. 203; *Powers* v. *State*, 74 Miss. 777, 21 South. 657; *Wroe* v. *State*, 20 Ohio St. 460; *Blair* v. *State* (Okl. Cr.), 111 Pac. 1003; *State* v. *Saunders*, 14 Or. 300, 12 Pac. 441; *State* v. *Gile*, 8 Wash. 12, 35 Pac. 417.) We think the substance of this statement comes clearly within the rules announced above, and that the motions were properly denied.

7. Matt Kusola, a witness called by the state, testified that he was an eye-witness to the shooting, and detailed somewhat minutely the circumstances of the affray. The defendant called

witnesses, who testified that Kusola had stated to them out of court, in substance, that he did not see the shooting, and did not know who did it until informed afterward. In rebuttal the county attorney recalled Kusola and asked him these questions, each of which he answered in the affirmative: "Q. State to the court and jury whether or not you made any statement to me at the time, as to who did the shooting the night before. Q. Was the statement made by you to me on the morning of the 4th of July the same as testified to by you here concerning the shooting of the night of the 3d, when you were asked on the morning of the 4th of July by me about the shooting of the night before? Q. Did you tell me just the same as you testified here yesterday; did you tell the same facts or the same story; did you tell me the same as you told the jury?" To each question defendant's counsel objected on the ground that it called for hearsay evidence. Our Code (section 7862) provides: "A witness can testify to those facts only which he knows of his own knowledge," etc. "The term 'hearsay,' as used in the law of evidence, signifies all evidence which is not founded upon the personal knowledge of the witness from whom it is elicited, and which consequently does not depend wholly for its credibility and weight upon the confidence which the jury may have in him. Its value, if any, is measured by the credit to be given to some third person not sworn as a witness to that fact, and consequently not subject to cross-examination." (Underhill on Evidence, ed. 1894, p. 63.) "Hearsay denotes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also, in part, on the veracity and competency of some other person." (1 Greenleaf on Evidence, 15th ed., sec. 99.) The principal objections to this species of evidence are (1) that it is not given under oath—that is, that the person whose words are repeated was not under oath—and (2) that such person is not subject to cross-examination. That the evidence sought to be elicited by these questions was not hearsay is apparent enough. The witness could answer [12] every question of his own knowledge, and the value of the testimony given did not depend in any degree upon the veracity

or competency of any other person. However objectionable the evidence may have been upon other grounds, the trial court was required to pass upon the objection as made, and this court sits only as a court of review in this case. Upon the objection made the ruling was correct.

8. Finally, it is said that the evidence does not sustain the verdict, and the argument upon this assignment presents a somewhat unique problem. It is urged that there are two distinct theories of the shooting, and only two, disclosed by the evidence; that the testimony of the witnesses for the state shows a willful and deliberate murder; that of the witnesses for the defendant tends to show justifiable homicide. The jury returned a verdict for manslaughter; and it is now argued that, if the jury believed the state's witnesses, the verdict should have been for murder, while, if they believed defendant's witnesses, the verdict should have been not guilty. But in any event, it is said, there was not any evidence to justify a verdict for manslaughter. We are not prepared to agree altogether with this last statement. It is true that the evidence tending to show that the crime committed amounted to manslaughter only is slight; but the court in its instructions defined manslaughter, distinguished it from murder, and instructed the jury that they might find the defendant guilty of murder in the first degree, murder in the second degree, manslaughter, or they might return a verdict of not guilty. There was not any objection made to any of these instructions, and under our Code (section 9271) the defendant is bound by [13] them. He acquiesced in the theory of the case that there was evidence upon which a verdict of manslaughter might be predicated, and we do not think that he is now in a position to complain that the jury did not find him guilty of a more serious crime. But, to warrant this court in interfering, it must appear [14] that the substantial rights of the defendant have been injuriously affected. (Rev. Codes, secs. 9415, 9548; *State* v. *Gordon,* 35 Mont. 458, 90 Pac. 173; *State* v. *De Lea,* 36 Mont. 531, 93 Pac. 814; *State* v. *Byrd,* above.) The authorities which support the view that a defendant convicted of a lesser offense

cannot complain that the evidence shows a more serious crime will be found collected in *People* v. *Muhlner,* above.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

