## STATE, Respondent, *v.* MARTIN, Appellant.

(No. 5,953.)

(Submitted June 22, 1926. Decided July 1, 1926.)

[248 Pac. 176.]

*Criminal Law—Dying Declarations—When Admissible, When not—Preliminary Showing—Insufficiency.*

Homicide—Dying Declarations—When Admissible in Evidence.
　　1. To render an alleged dying declaration admissible in evidence, it is incumbent upon the state to prove beyond a reasonable doubt that the declaration was made by a dying person, that it was made under a sense of impending death and that it related to the cause of his dying condition.

Same—Dying Declarations Made Under Sense of Impending Death—Rule.
　　2. To meet the rule that a person making a dying declaration must have been under a sense of impending death, the state must show that the declarant at the time of making it had abandoned all hope of recovery from the injury inflicted by defendant and was under a firm conviction that his death was inevitable and near at hand, *i. e.,* to render the declaration admissible it must prove the declarant's state of mind.

Same—Dying Declarations—State of Mind of Declarant may be Shown by Circumstantial Evidence.
　　3. In the absence of a specific statement by one making a dying declaration that he is fully conscious that he is dying, his state of mind in that respect may be shown by circumstantial evidence relative to his bodily condition, the nature of his wounds, his

1. See 1 R. C. L. 537.
2. See 1 R. C. L. 544.
3. See 1 R. C. L. 545.

[76 Mont. 565.]

conduct, the fact that he received the last rites of his church, made directions for his funeral, the disposition of his property, the care of his family, and the like.

Same—Declaration Made in Delirium Inadmissible.

4. A dying declaration made by one in delirium, or by one so nearly dead that he cannot appreciate his condition, is not admissible in evidence.

Same—Dying Declarations to be Received With Caution.

5. Under the most favorable circumstances dying declarations should be admitted with great caution.

Same—Dying Declaration—Improper Admission in Evidence.

6. Decedent, suffering from knife wounds who in addition had been struck on the head with a blunt instrument five times, shortly after an encounter with defendant, was asked who stabbed him, and in a whisper gave the name of defendant. He died two or three days later without making any other statement. *Held*, that in the absence of proof that declarant was conscious at the time he uttered the name of defendant, that the name was intended by him as an answer to the question and that he uttered it under a sense of his impending death, the admission of the declaration in evidence as a dying declaration was error.

[1] Homicide, 30 C. J., sec. 494, p. 252, n. 8; sec. 497, p. 254, n. 19; sec. 498, p. 255, n. 24; sec. 510, p. 272, n. 29.

[2, 3] Homicide, 30 C. J., sec. 498, p. 255, n. 24; p. 256, n. 30 New; p. 257, n. 42 New; sec. 504, p. 263, n. 36, 37; p. 264, n. 42; sec. 505, p. 266, n. 52, 53, 55, 56; p. 267, n. 58, 60 New; Impending, 31 C. J., p. 254, n. 26 New; Sense, 35 Cyc., p. 1377, n. 99 New; Statutes, 36 Cyc., p. 1125, n. 38 New.

[4] Homicide, 30 C. J., sec. 518, p. 278, n. 8 New.

[5] Homicide, 30 C. J., sec. 493, p. 252, n. 2, 3, 4; sec. 494, p. 252, n. 8.

[6] Homicide, 30 C. J., sec. 503, p. 261, n. 10; sec. 504, p. 263, n. 36, 37; p. 264, n. 42; sec. 520, p. 279, n. 17, 19.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

CHRIS MARTIN was convicted of manslaughter, and appeals from the judgment and from an order denying him a new trial. Reversed and remanded.

*Mr. Timothy Nolan* and *Mr. Harlow Pease,* for Appellant, submitted a brief; *Mr. Pease* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the evening of September 12, 1925, Chris Martin and James Stevens engaged in a fight in front of Martin's home on Utah Avenue in Butte. They were separated but almost immediately went into a dark alley nearby and renewed the fight. In the alley at the time was another man, or two other men were present, and this man, or these men, took some part in the fight. It was so dark in the alley that a light had to be produced in order to see the participants. Martin and Stevens were separated again, but they repaired to the street immediately and renewed the combat. They were then separated for the third time, and Martin then went into his home. Stevens walked down the street thirty or forty feet, turned, retraced his steps in whole or in part, and sat down in front of a store. About this time the police officers arrived on the scene. Stevens, appearing to be badly hurt, was taken to St. James Hospital and Martin was arrested and taken to the city jail. It was then 9:30 P. M. When he arrived at the hospital, Stevens was apparently conscious, but was very weak, suffering from several wounds on the head, two in the breast and one in the abdomen. At 11 P. M., Dr. O'Rourke arrived at the hospital, examined the wounds, observed Stevens' appearance, and determined in his own mind that the man was in a dying condition, but did not mention the matter to Stevens. At that time the ambulance driver, a policeman, a nurse, and Mr. Rotering, deputy county attorney, were present. Stevens was lying on an operating-table with his eyes closed. Someone asked him how he felt but he only mumbled or grunted, and what he said, if anything, could not be understood. Mr. Rotering asked him who stabbed him, but Stevens made no reply. Dr. O'Rourke then shook Stevens by the shoulder, and said, "Who stabbed you?" and in a whisper Stevens said, "Chris Martin." Stevens died two or three days later from hemorrhage,

shock, and general peritonitis induced by a knife wound in the abdomen and a like wound in the breast.

Martin was charged with murder, was convicted of manslaughter and has appealed from the judgment and from an order denying him a new trial.

To make out a case sufficient to go to the jury it was incumbent upon the State to prove that Martin inflicted the knife wounds from which Stevens died. Martin testified that he did not have a knife and did not inflict those wounds; and although there were eighty or ninety persons present who witnessed the two encounters in the street, no one testified that he saw Martin use a knife. Walter Hackett, a witness for the State, testified that Martin "had something in his hand, but I couldn't say what it was"; and George Strohl also testified for the State that Martin had what "appeared to be a knife in his hip pocket." But each of these witnesses was so utterly discredited on cross-examination that it seems inconceivable that the jury believed either of them. The only other evidence which tends to connect Martin with the offense is the so-called dying declaration of Stevens, and the principal error assigned upon this appeal is the ruling of the trial court admitting that declaration in evidence.

Assuming for present purposes that Stevens actually made answer to the question propounded by Dr. O'Rourke, the testimony of the State's witnesses reiterating that answer to the jury was pure hearsay, but it was admissible hearsay if the proper foundation was laid. The rule admitting it is expressed in our statute as follows: "In criminal actions, the [1] act or declaration of a dying person, made under a sense of impending death, respecting the cause of his death" is admissible. (Sec. 10531, Rev. Codes, 1921.)

"Now the general principle on which this species of evidence is admitted is that they are declarations made in extremity, when the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth; a situation so solemn,

and so awful, is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice.'' (*Rex* v. *Woodcock,* 1 Leach, C. C. 500.)

It would be idle for us at this late day to enter upon a discussion of the origin of the rule. Its history will be found in 3 Wigmore on Evidence, 2d ed., Chap. 47. It will be observed that the rule requires, as a condition precedent to the admissibility of the declaration, preliminary proof of the concurrence of the following conditions: (1) That the declaration was made *by a dying person,* or, in the more flowery phrases of the courts, by one *in extremis* or *in articulo mortis;* (2) that the declaration was made under a sense of impending death; (3) that the declaration relates to the cause of the declarant's death, or, more exactly, to the cause of his dying condition.

For the purposes of this case we will assume that the record discloses satisfactorily that, at the time the statement was made, Stevens was a ''dying person'' within the meaning of the statute, although he did not die until two or three days after the statement was made, and that his statement related to the cause of his dying condition. We are then concerned [2, 3] here only with the second condition mentioned above, and the one question for determination is: Does the record disclose that the declaration was made by Stevens under a sense of impending death? The word ''sense'' as employed here means: Rational appreciation; recognition; apprehension; belief. The word ''impending'' means: Imminent; threatening to occur immediately; near at hand.

In 3 Wigmore on Evidence, 2d ed., section 1440, the learned author says: ''It follows from the general principle that the belief must be not merely of the possibility of death, nor even of its probability, but of its certainty. A less stringent rule might with safety have been adopted, but this is the accepted one. The tests have been variously phrased: There must be 'no hope of recovery'; 'a settled expectation of death'; 'an undoubted belief.' Their general effect is the

same. The essential idea is that the belief should be a positive and absolute one, not limited by doubts and reserves, so that no room is left for the operation of worldly motives."

In support of the text, Dean Wigmore cites the following: "These declarations would not be evidence, unless she was under a clear impression that she was in a dying state." (*Reg. v. Mooney,* 5 Cox Cr. 318.) "There must be a settled, hopeless expectation of death in the declarant." (*Reg. v. Peel,* 2 F. & F. 21.) The declarant "shall have a complete conviction that death is at hand. * * * Death, shortly to ensue, must be an absolute certainty, so far as the consciousness of a person making the accusation is concerned." (*Peak v. State,* 50 N. J. L. 222, 12 Atl. 701, 706.)

The prevailing rule in this country is stated succinctly in 30 C. J. 255, as follows: "It is not enough that the statement be made when the declarant is *in extremis;* it is also essential that it be made when he has abandoned all hope of recovery from the injury inflicted by the accused and is under the firm conviction that his death is inevitable and near at hand."

Again Dean Wigmore says: "It follows also that the expectation must be of a speedy death. All men are mortal and know it. An expectation of ultimate, but distant, death is obviously, in experience, not calculated to produce that sincerity of statement which is desired." (3 Wigmore on Evidence, 2d ed., sec. 1441.)

From the language of our statute, as well as from these observations, it follows that it is not the actual fact of the declarant's physical condition, not the belief of the trial court or the attending physician that the man was *in extremis* when he spoke, but it is the state of mind of the declarant which determines the admissibility of the declaration (*People v. Falletto,* 202 N. Y. 494, 96 N. E. 355), and the burden is upon the prosecution to prove that state of mind.

Practically all of the authorities now agree that the fact that the declarant was acting under a sense of impending death at the time the declaration was made, may be shown by circumstantial evidence, as well as by his own statement

that he had given up all hope of recovery (*State* v. *Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603; 3 Wigmore on Evidence, sec. 1442) ; in other words, in the absence of a specific statement by the declarant that he is fully conscious that he is dying, it will be sufficient if the surrounding facts indicate that he was conscious of the certainty of his immediate death at the time the declaration was made, and in aid of this the court may take into consideration the bodily condition of the declarant, his wounds, his conduct, his language and his declaration, and all facts from which a conclusion may be deduced of his consciousness of approaching dissolution at the time (Wharton's Crim. Evidence, 10th ed., p. 535).

Among the circumstances tending to prove that state of mind are: That the declarant sought the consolation of religion, or received the last rites of his church, and whether his conduct was that of a person fully conscious of immediate approaching death, as evidenced by his directions for his funeral, the disposition of his property, the care of his family, and the like. Indeed, we may go further and adopt the extreme view of the text-writers and some courts, that: ''If in a given case the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently attained.'' (3 Wigmore on Evidence, sec. 1442.)

In *Territory* v. *Eagle,* 15 N. M. 609, Ann. Cas. 1912C, 81, 30 L. R. A. (n. s.) 391, 110 Pac. 862, the court held a dying declaration admissible, although the declarant did not say anything to indicate that he had abandoned all hope of recovery. After considering the declaration itself and describing the nature of the wound, the court said: ''It must be inferred therefrom that Eteewa was conscious of his condition and under the sense of impending death at the time the statement was made.'' The declaration does not appear in the opinion, but it does appear that the statement was reduced to writing. It may be that the terms and extent of the declaration were sufficient to indicate that the declarant was entirely conscious at the time, and the facts recited in the declaration, together with the nature and extent of the injury, might reasonably justify the conclusion reached by the court

in that case. But it must be apparent to everyone that the injury alone is a very uncertain criterion by which to determine that the injured person was under a sense of impending death at the time he made the statement offered as a dying declaration. The very nature and extent of the injury may be such as to produce delirium or to render the victim insensible to his condition. It is axiomatic that a statement made by one in delirium, or by one so nearly dead that he [4] cannot appreciate his condition, would not meet the requirements of the rule. (2 Jones on Evidence, sec. 333.)

The authorities are all agreed that under the most favorable circumstances dying declarations are to be admitted with [5] great caution, for while the solemnity of the occasion may supply the place of an oath, nothing else can supply fully the absence of cross-examination. Furthermore: ''Dying declarations have every element of dramatic evidence. As the last utterances of a sentient, conscious being, standing on the threshold of eternity, they possess an impressiveness out of all proportion to their evidentiary value.'' (Wharton's Crim. Evidence, 10th ed., p. 529.)

With these principles in mind, we recur to the one question [6] before us for solution: Does the record disclose that the declaration was made by Stevens under a sense of impending death? So far as we are informed by the record, the two words ''Chris Martin'' were the only words uttered by Stevens during the two or three days which elapsed from the time he was injured until he died, and whether he was conscious when he uttered those words is left entirely to speculation. He and Martin had been enemies; they had just been engaged in a fierce fight; he had been struck on the head with a blunt instrument five times; and someone had inflicted upon him knife wounds from the effect of which his vitality was rapidly receding. Under these circumstances we think it just as reasonable to assume that the words uttered by Stevens when aroused somewhat from his stupor were the offsprings of delirium, as that they expressed a conscious reply to Dr. O'Rourke's question. But, furthermore, we have failed to find anything in this record to indicate ''a rational apprehension,'' ''an undoubted belief,'' ''a com-

plete conviction'' on the part of Stevens that his death was "inevitable," "certain," "shortly to ensue," at the time he uttered the words mentioned. He may have spoken under a sense of impending death, but the nature and extent of his wounds, coupled with the brief statement dragged from him under the circumstances disclosed above, do not indicate any such condition to our minds.

So far as this case is concerned, there is but one rule of evidence which measures the *quantum* of proof in a criminal case. The burden was upon the state to prove beyond a reasonable doubt that Stevens was conscious at the time he spoke; that the words spoken by him were intended as an answer to the question propounded by Dr. O'Rourke; and that he uttered them under a sense of his own impending death. (*People* v. *White,* 251 Ill. 67, 95 N. E. 1036.) We have not discovered a decided case in which such a meager preliminary showing has been held sufficient to justify the admission in evidence of a dying declaration. The former decisions of our court do not aid us. In each of the cases involving the admissibility of a dying declaration, the surrounding circumstances were such that the bare statement of them would have justified the ruling questioned. (*State* v. *Russell,* 13 Mont. 164, 32 Pac. 854; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411; *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407; *State* v. *Crean,* above; *State* v. *Kacar,* 74 Mont. 269, 240 Pac. 365.)

It is our conclusion that this record does not disclose beyond a reasonable doubt that Stevens was acting under a sense of impending death at the time he made the statement mentioned, and that the trial court erred in admitting the statement in evidence.

The judgment and order are reversed, and the cause is remanded to the district court of Silver Bow county for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.